EXHIBIT A

APG 723



## MARKET REFORM CONTRACT

| | | |
|---|---|---|
| Insured | : | Constellation  Healthcare Technologies Inc. |
| Type | : | Directors and Officers |
| Limit | : | USD 5,000,000 |
| Period | : | From: 7th January 2017 to 7th January 2018 |
| UMR | : | B0723EI00943A17 |

Alsford Page & Gems Limited
Registered office: Minories House, 2-5 Minories, London, EC3N 1BJ - Registered in England 008646
Authorised by the Financial Conduct Authority. Ref 313489
Broker at Lloyd's

PSC INSURANCE GROUP

AW_00007499

alsford page & gems

B0723EI00943A17

**RISK DETAILS**

| | |
|---|---|
| **UNIQUE MARKET REFERENCE:** | B0723EI00943A17 |
| **TYPE:** | DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE. |
| **PROPOSAL FORM:** | Signed and dated: 29th December 2016 |
| **INSURED:** | Constellation Healthcare Technologies Inc. |
| **ADDRESS:** | 3200 Wilcrest Drive Suite 600<br>Houston , Texas, 77042-6000 |

**PERIOD:**  From:  7th January 2017 Local Standard Time at 00:01am, at the mailing address of the Insured.

To:  7th January 2018 Local Standard Time at 00:01am, at the mailing address of the Insured.

**INTEREST:**  Directors, Officers and Company Liability as more fully described in the wording attached.

**LIMIT OF LIABILITY:**  USD 5,000,000 Aggregate, all insurance covers and extensions, except insurance cover 1.2

USD 1, 000,000 Separate excess aggregate limit for directors under insurance cover 1.2 only.

Sub-limited to:

USD Emergency costs 10% of policy limit

USD Assets and liberty costs 10% of policy limit

Excess of the following Retentions:

USD 100,000 in respect of loss from Indemnifiable and Entity Claims
But USD 200,000 in respect of claims arising from corporate takeover objections

**SITUATION:**  Texas  extended to territorial Limits Worldwide

**CONDITIONS:**  Wording:   Directors and Officers Liability Insurance wording as attached

Continuity Date: Date of Incorporation, 3rd September 2014 (in accordance with item 8. of the wording schedule).

Discovery periods: 90 days at Nil additional premium and 1 year at 100% of the full annual premium (in accordance with item 9. of the wording schedule).



B0723EI00943A17

Sanctions Limitation and Exclusion Clause LMA3100
Professional services Exclusion ( failure to supervise carve back)
Closely held 20% exclusion
Increased retention for corporate takeover endorsement as attached
US public Offering exclusion as attached

<u>Insurance Covers and Extensions (in accordance with item 10. of the wording schedule)</u>: ("N/A " means not covered.)

| | |
|---|---|
| Insurance Cover 1.1 - Management Liability: | Covered |
| Insurance Cover 1.2 - Special Excess protection for directors: | Covered |
| Extension 2.1 - Discovery period (Bilateral 1 year at 100% / 7years retired directors): | Extended |
| Extension 2.2 - Emergency Costs: | Extended |
| Extension 2.3 - Assets and liberty costs: | Extended |
| Extension 2.4 - Court Attendance: | Extended |
| Extension 2.5 - Corporate Manslaughter: | Extended |
| Extension 2.6 - New Subsidiaries: | Extended |

Claims protocol as attached
Special Cancellation Clause, as attached.

NMA 2918 - War and Terrorism Exclusion Endorsement, as attached.

NMA 1256 Nuclear Incident Exclusion Clause- Liability –(Broad) (U.S.A.)

NMA 1477 – Radioactive Contamination Exclusion Clause – Liability – Direct (U.S.A.)

LMA 5091 – U.S. Terrorism Risk Insurance Act of 2002 as amended new and renewal business endorsement

NMA1168 Small Additional or Return premiums Clause

<u>NOTICES:</u>            Texas Surplus Lines Notice

<u>EXPRESS WARRANTIES:</u>    General Provision 5.11 of the wording (being '**Cooperation and fraudulent behavior**').

alsford page & gems

B0723EI00943A17

| | |
|---|---|
| **CHOICE OF**<br>**LAW AND**<br>**JURISDICTION:** | Law: In accordance with General Provision 5.22 (being **'Policy Interpretation'**) of the wording, any interpretation of this insurance or issue relating to its construction, validity or operation shall be determined by the laws of New York Jurisdiction: United States of America in accordance with NMA1998 Service of suit clause naming:<br>Mendes & Mount<br>750 Seventh Avenue<br>New York,<br>NY 10019.<br>USA |
| **PREMIUM:** | USD 65,000  (annual) |
| **PREMIUM PAYMENT**<br>**TERMS:** | LSW 3000 - Premium Payment Clause (45 days), as attached. |
| **TAXES PAYABLE BY**<br>**INSURED AND**<br>**ADMINISTERED**<br>**BY INSURER(S):** | None at inception, subject as decreed by legislation. |

AW_00007502

alsford page & gems

B0723EI00943A17

**RECORDING TRANSMITTING AND STORING INFORMATION:**

Where the broker maintains risk and/or claim data/information/documents the broker may hold such data/information/documents electronically.

**INSURER CONTRACT DOCUMENTATION:**

This contract details the contract terms entered into by the insurer(s).

Unless otherwise specified below no further insurer contract documentation will be issued.

This contract is subject to US state surplus lines requirements. It is the responsibility of the surplus lines broker to affix a surplus lines notice to the contract document before it is provided to the insured. In the event that the surplus lines notice is not affixed to the contract document the insured should contact the surplus lines broker.

**INFORMATION**

E mail dated 30th December 2016

Signed and dated application 29th  December 2016

AW_00007503



B0723EI00943A17

### TEXAS SURPLUS LINES CLAUSE

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes.  The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a 4.85 percent tax on gross premium.

01/04/09

LSW1023A



B0723EI00943A17

**TEXAS COMPLAINTS NOTICE**

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:<br>**1-800-252-3439**<br>You may write to the Texas Department of Insurance: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:<br>**1-800-252-3439**<br>Puede escribir al Departamento de Seguros de Texas: |
| P. O. Box 149104 | P. O. Box 149104 |
| Austin, TX 78714-9104 | Austin, TX 78714-9104 |
| Fax: (512) 475-1771 | Fax: (512) 475-1771 |
| Web: http://[ HYPERLINK "http://www.tdi.state.tx.us/" \o "tdi web address" ] | Web: http://[ HYPERLINK "http://www.tdi.state.tx.us/" \o "tdi web address" ] |
| E-mail: ConsumerProtection@tdi.state.tx.us<br>**PREMIUM OR CLAIM DISPUTES:** | E-mail: ConsumerProtection@tdi.state.tx.us<br>**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero.  Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |
| Should you have a dispute concerning your premium or about a claim you should contact the agent first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.<br>**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

07/07

LSW1022A



B0723EI00943A17

*Directors' and Officers' Liability Insurance*

*Schedule*

**Policy Number:**

| | | |
|---|---|---|
| Item 1. | **Policyholder:** | Constellation Healthcare Technologies Inc |
| | **Address:** | 3200 Wilcrest Drive, Suite 600<br>Houston Texas, 77042 |

| | | |
|---|---|---|
| Item 2. | **Policy period:** | Inception date:    7th January 2017<br>Expiry date:        7th January 2018<br>Both days Local Standard Time at 00:01am, at the address stated in Item 1 above |

| | | |
|---|---|---|
| Item 3. | **Limit of liability:** | Aggregate, all insurance covers and extensions, except insurance cover 1.2    USD 5,000,000 |

| | | |
|---|---|---|
| Item 4. | **Sublimits:** | **Emergency costs**    USD 500,000 |
| | | Assets and liberty costs    USD 500,000 |

| | | |
|---|---|---|
| Item 5. | **Director special excess limit:** | Separate excess aggregate limit for **directors** of the **policyholder** under insurance cover 1.2 only:    USD 1,000,000 |

| | | |
|---|---|---|
| Item 6. | **Retention:** | **Loss** from any **claim**    USD 100,000 |
| | | **Loss from claims arising from Merger and Acquisitions**    USD 200,000 |

| | | |
|---|---|---|
| Item 7. | **Premium:** | Premium:    USD65,000    (annual) |
| | | Insurance Premium Tax:    USD Nil |
| | | Total payable:    USD 65,000 |

AW_00007506

alsford page & gems

B0723EI00943A17

| Item 8. | **Continuity date:** | 3rd September 2014 | |
|---|---|---|---|
| Item 9. | **Discovery periods:** | 90 days: | Nil |
| | | 1 year: | 100% of the full annual premium in effect at the expiry of the **policy period** |
| Item 10. | **Insurance covers:** | Only the insurance covers and extensions designated as "Covered" or "Extended" below are afforded by this policy. "N/A" means not covered. | |
| | | Insurance Cover 1.1: | Covered |
| | | Insurance Cover 1.2: | Covered |
| | | Extension 2.1: | Extended |
| | | Extension 2.2: | Extended |
| | | Extension 2.3: | Extended |
| | | Extension 2.4: | Extended |
| | | Extension 2.5: | Extended |
| | | Extension 2.6: | Extended |
| Item 11. | **Insurer** | **Hiscox Syndicate 33** | |

AW_00007507



B0723EI00943A17

*Directors' and Officers' Liability Insurance*

In consideration of the payment of the premium and in reliance upon the **submission**, the **insurer** and the **policyholder** agree as follows:

*1      Insurance Cover*

The following insurance covers are afforded solely for **claims** first made against an **insured** during the **policy period** and reported to the **insurer** as required by this policy.

1.1    **Management Liability**

(i)      **Individuals**

The **insurer** shall pay the **loss** of each **insured person** due to any **wrongful act**.

(ii)     **Outside entity directors**

The **insurer** shall pay the **loss** of each **outside entity director** due to any **wrongful act**.

(iii)    **Company reimbursement**

If a **company** pays the **loss** of an **insured person** due to any **wrongful act** of the **insured person**, the **insurer** will reimburse the **company** for such **loss**.

(iv)    **Entity**

The **insurer** shall pay the **loss** on behalf of the **company** due to any **wrongful act**.

1.2    **Special excess protection for directors**

The **insurer** will pay the **non-indemnifiable loss** for all **directors**, up to the **directors special excess limit**, due to any **wrongful act** when: (i) the **limit of liability**, (ii) all other applicable insurance whether specifically written as excess over the **limit of liability** of this policy or otherwise; and (iii) all other indemnification for **loss** available to any **non-executive director** have all been exhausted.



B0723EI00943A17

## 2.  *Extensions*

### 2.1  Discovery

**(i)      Bilateral discovery period**

If this policy is neither renewed nor replaced with similar cover with the **insurer**, the **policyholder** shall be automatically entitled to a **discovery period**, of 90 days, or, upon payment of the applicable additional premium, of the period specified in Item 9 of the schedule.

**(ii)     Discovery period for retired insured persons**

If this policy is neither renewed nor replaced with similar cover with the **insurer, retired insured persons** shall automatically be entitled to a **discovery period** of seven years at no additional premium.

### 2.2  Emergency costs

If, due to an emergency, the **insurer's** written consent cannot reasonably be obtained before **defence costs** are incurred with respect to any **claim**, the **insurer** will give retrospective approval for such **defence costs** of up to, the amount stated in the Schedule, in the aggregate.

### 2.3  Assets and liberty costs

**(i)      Prosecution costs**

The **insurer** will pay, where permitted by law, the **prosecution costs** of each **insured person** to obtain the discharge or revocation of a **judicial order** entered during the **policy period** imposing:

(a)     confiscation, assumption of ownership and control, suspension or freezing of rights of ownership of real property or personal assets of such **insured person**;

(b)     a charge over real property or personal assets of such **insured person**;

(c)     a temporary or permanent prohibition on such **insured person** from holding the office of or performing the function of a **director or officer**;

(d)     restriction of such **insured person's** liberty to a specified domestic residence or an **official detention**;

(e)     deportation of an **insured person** following revocation of otherwise proper, current and valid immigration status for any reason other than such **insured person's** conviction of a crime; or

(f)     extradition of such **insured person**.

**(ii)     Bail bond and civil bond expenses**

The **insurer** will pay **bail bond and civil bond expenses** of each **insured person** incurred directly in connection with a **claim** covered under any insurance cover of this policy during the **policy period**.

**(iii)    Damage to reputation**

The **insurer** will pay the **public relations expenses** of each **insured person**.

The **insurer's** total aggregate liability for cover under this extension 2.3 shall not exceed the amount stated in the Schedule.

### 2.4  Court Attendance



B0723EI00943A17

**Defence costs** shall include USD 500 (or currency equivalent) per day for each day on which an **insured person** has been required to and has attended court as a witness in connection with a **claim** notified under and covered by this policy. The **retention** shall not apply to this extension.

2.5    **Corporate manslaughter**

Cover under this policy is extended to **loss** arising from a **claim** for **corporate manslaughter**

2.6    **New subsidiaries**

If the **policyholder** obtains, during the **policy period**, either directly or indirectly through one or more of its **subsidiaries**

(i)     control of the composition of the board of **directors**;

(ii)    control of more than half of the shareholder voting power; or (iii) a holding of more than half of the issued share capital;

of any corporation, then the term **subsidiary** will be extended to include that corporation for **wrongful acts** subsequent to acquisition  unless, at the time of obtaining such control or holding, the corporation has total gross assets which are more than 25% of the total consolidated assets of the **policyholder** at inception

Cover for new subsidiaries will be limited to acts subsequent to the acquisition date of the subsidiary.

In all other **circumstances**, the **policyholder** may request an extension of this policy for such corporation; provided that the **policyholder** gives the **insurer** sufficient details to permit the **insurer** to assess and evaluate the **insurer's** potential increase in exposure. The **insurer** shall be entitled to amend the policy terms and conditions during the **policy period** including by the charging of a reasonable additional premium.

---

3.    _Definitions_

In this policy the following words in italics shall have the definitions that follow:

3.1    **Approved person**

any natural person employed by any **company** to whom the Financial Services Authority has given its approval to perform one or more of controlled functions 1-30 for a **company** pursuant to Section 59 of the Financial Services and Markets Act 2000.

3.2    **Bail bond and civil bond expenses**

the reasonable premium (but not collateral) for a bond or other financial instrument to guarantee for up to 12 months an **insured person's** contingent obligation for a specified amount required by a court hearing a **claim** for any **wrongful act.**

3.3    **Circumstance**

any fact, **circumstance** or event which an **insured** may believe could give rise to a **claim.**

Any **circumstance** arising out of, based upon or attributable to continuous, repeated or related  **wrongful managerial acts** shall be considered a single **circumstance**

3.4    **Claim**

alsford page & gems

B0723EI00943A17

1)  a written demand for monetary or non-monetary relief, including a written demand to engage in arbitration or mediation or toll or waive statute of limitations;

2)  a civil, criminal, administrative or regulatory proceeding commenced by the service of a complaint or similar pleading, the filing of a notice of charges or the return or issuance of an indictment, information, arrest warrant or similar charging document, including a demand for the extradition of an **Insured person**;

3)  a civil, criminal, administrative regulatory **investigation** of an **Insured person** commenced by the service of a subpoena upon or receipt by the **Insured person** of a target letter (including Wells notice) or similar written notice from a governmental authority identifying such **Insured person** as one against whom a proceeding may be commenced;

Any **claim** arising out of, based upon or attributable to continuous, repeated or related **wrongful managerial acts** shall be considered a single **claim**

## 3.5   Company

the **policyholder** or any **subsidiary**.

## 3.6   Continuity date

the applicable date specified as such in Item 9 of the schedule.

## 3.7   Corporate manslaughter

the prosecution of an **insured person** for involuntary manslaughter including constructive manslaughter or gross negligence manslaughter in relation to the business of the **company** or any similar prosecution in any jurisdiction

## 3.8   Critical regulatory event

(i)  a raid or on-site visit to any **company** which first takes place during the **policy period** by any official regulator (such as the Health and Safety Executive) that involves the production, review, copying or confiscation of files or interviews of any **insured persons**;

(ii)  a public announcement relating to the foregoing; or

(iii)  the receipt by any **insured** during the **policy period** from any official regulator of a formal notice which legally compels the **insured** to produce documents to, or answer questions by or attend interviews with that regulator.

## 3.9   Defence costs

reasonable costs and expenses incurred either as **emergency costs** or with the **insurer's** prior written consent (which shall not be unreasonably delayed or withheld), by or on behalf of an **insured** after a **claim** is made, directly in connection with its **investigation**, defence, settlement or appeal, but shall not include remuneration of any **insured**, cost of their time or costs or overheads of any **company**. **Defence costs** include the reasonable fees, costs and expenses of an accredited expert retained through defence counsel approved by the **insurer** on behalf of an **insured** to prepare an evaluation, report, assessment, diagnosis or rebuttal of evidence in connection with the defence of a covered **claim**.

## 3.10   Director or officer

any natural person **director** or **officer** of a **company**.

## 3.11   Director special excess limit

the sum specified in Item 5 of the schedule



B0723EI00943A17

### 3.12 Discovery period

a period immediately following expiry of the **policy period** during which written notice may be given to the **insurer** of a **claim** or **circumstance** first made during such period or the **policy period**, for a **wrongful act** occurring prior to the expiry of the **policy period**, provided any applicable additional premium required by the **insurer** is paid within 30 days of expiry of the **policy period**.

### 3.13 Emergency costs

**defence costs** incurred in accordance with extension 2.2, **Emergency costs**.

### 3.14 Employment practice violation

(a) any actual or alleged unfair or wrongful dismissal, discharge or termination, either actual or constructive, of employment, including breach of an implied contract; employment-related misrepresentation; wrongful failure to employ or promote, wrongful deprivation of career opportunities, or wrongful discipline; failure to furnish accurate job references; failure to grant tenure; negligent employee evaluation; sexual or workplace or racial or disability **harassment** of any kind (including the alleged creation of a harassing workplace environment); unlawful discrimination, whether direct, indirect, intentional or unintentional; failure to provide adequate employee policies and procedures; retaliation (including lockouts); and **inappropriate employment conduct**

(b) any other basis for a **claim** pursuant to the Employment Rights Act 1996 or similar legislation on other jurisdictions provided that the foregoing act, error omissions or basis relates to the employment or prospective employment of any past, present, future or prospective employee of any **company** including a **third party wrongful act.**

### 3.15 Harassment

means actual or alleged unwelcome sexual advances, requests for sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature, where such harassment is based on an employee's race, color, religion, age, sex, disability (including AIDS), pregnancy, sexual orientation, transgender status, national origin, or any other basis protected by federal, state or local law and is explicitly or implicitly made a condition of employment, used as a basis for employment decisions or performance, or creates a hostile, intimidating or offensive work environment or that interferes with performance.

### 3.16 Inappropriate Employment Conduct

means any of the following

1. actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful;

2. actual or alleged wrongful demotion, evaluation and investigation, retaliation, retaliatory discharge, whistle blowing, violation of public policy, promissory estoppel or intentional interference with an employment contract, deprivation of a career opportunity, or discipline;

3. actual or alleged negligent hiring, retention or supervision;

4. actual or alleged breach of an implied or express written employment agreement;

5. actual or alleged violation of the Family and Medical Leave Act, Uniformed Services Employment and Re-employment Rights Act or any similar state law;



B0723EI00943A17

6.   actual or alleged misrepresentation, false imprisonment, detention or malicious prosecution in connection with an employment decision;

7.   actual or alleged libel, slander, defamation of character or any invasion of right of privacy in connection with an employment decision (including defamation of character in connection with a employee reference); or

8.   actual or alleged failure to employ or promote, train, create or enforce adequate workplace or employment policies and procedures or grant tenure or seniority,

but only if employment-related and claimed by or on behalf of an employee, former employee, or applicant for employment, and only if committed or allegedly committed by any of the **insureds** in their capacity of such.

### 3.17   Insured

The **company** and any plan sponsored by the **company** or any **insured person**.

### 3.18   Insured person

any natural person who was, is or during the **policy period** becomes:

(i)   a **director** or **officer**, but not an external auditor or insolvency office-holder of a **company**,

(ii)   an **approved person**;

(iii)   an employee of a **company**:

   (a)   while acting in a managerial or supervisory capacity in that **company**,

   (b)   with respect to a **claim** alleging an **employment practice violation**; or

   (c)   named as a co-defendant with a **director** or **officer** of a **company** in a **claim** in which such employee is alleged to have participated or assisted in the commission of a **wrongful act**

(iv)   a **shadow director**,

(v)   an **outside entity director**,

(vi)   the spouse of an **insured person** who is deceased, incompetent or insolvent, for **loss** arising from a **claim** for a **wrongful act** of such **insured person**, and

(vii)   the administrator or executor of a deceased **insured person's** estate for **loss** arising from a **claim** for a **wrongful act** of such **insured person**.

(viii)   **non executive director**

(ix)   trustee of a sponsored plan

### 3.19   Insurer

The **insurer** is as specified in Item 11 of the schedule.

AW_00007513



B0723EI00943A17

3.20 **Investigation**

any hearing, **investigation** or inquiry by any **official body** concerning possible misconduct by any **insured person** in his capacity as such once the **insured person**: (i) becomes legally compelled to attend; or (ii) is identified in writing by an investigating authority as a target of the hearing, **investigation** or inquiry. An **investigation** shall be deemed to be first made when the **insured person** is first so compelled or so identified. **Investigations** shall not mean routine regulatory supervision, inspections or compliance reviews, internal **investigations**.

3.21 **Investigation costs**

reasonable fees, costs and expenses (except remuneration of any **insured**, cost of their time or costs or overheads of any **company**) incurred with the **insurers** prior written consent by or on behalf of the **company** or an **insured person** directly in connection with preparing for and attending an **investigation**.

3.22 **Judicial order**

(i)     an interim or interlocutory **judicial order**; or

(ii)    with respect to any proceeding concerning the deportation or extradition of any **insured person**, any **judicial order**;

entered against an **insured person** in connection with a **claim** against such **insured person** that is covered under any insurance cover of this policy. **Judicial order** shall not include a final order made in the disposition or adjudication of such **claim**.

3.23 **Limit of liability**

the sum specified in Item 3 of the schedule.

3.24 **Loss**

any **defence costs**, **investigation costs**, awards of damages (including punitive and exemplary damages the multiplied portion of multiple damages), awards (including pre and post interest judgment awards of costs or settlements for which an **insured** is legally liable or out of court settlements resulting from a **claim** against an **insured** for any **wrongful act**.

**Loss** also includes payments made by the **insurer** under any extension, including with respect to: extension 2.2, **Emergency costs**; extension 2.3, **Prosecution costs, Bail bond and Civil bond expenses**. However, with respect to extensions 2.2 **loss** does not include awards of damages.

**Loss** shall not include fines or penalties, taxes, remuneration or employment related benefits, any sum payable pursuant to a financial support direction or contribution notice issued by the Pensions Regulator or amounts which are uninsurable.

3.25 **Non-executive director**

any natural person who serves or has served as a **director** of the **policyholder** and:

(i)     does not serve as an **officer** or employee of the **company, and**

(ii)    does not receive and has not received compensation, either directly or indirectly, from the **company** for services rendered as a consultant or in any capacity, other than as a **director**.

**Non-executive director** also means any natural person who begins serving as a **director** of the **policyholder** during the **policy period** and who satisfies (i) and (ii) above.

3.26 **Non-indemnifiable loss**

alsford page & gems

B0723EI00943A17

loss of an **insured person** that a **company** is unable to indemnify due to legislative prohibition or publicly declared or established insolvency.

3.27    **Official body**

any regulator, government body, government agency or official trade body.

3.28    **Official detention**

confinement of an **insured person** in secure custodial premises, operated by or on behalf of a governmental or judicial agency in connection with a **claim** against such **insured person** and either without charge or without a judicial finding of culpability or liability in that **claim**.

3.29    **Outside entity**

(i)      any not-for-profit **company**

(ii)     any for-profit **company** that is listed by endorsement to this policy as an **outside entity**

3.30    **Outside entity director**

a natural person who did or does, or during the **policy period** begins to serve, at the specific request of a **company**, as a **director; officer;** trustee, governor or equivalent of an **outside entity.**

3.31    **Policyholder**

the organisation specified in Item 1 of the schedule.

3.32    **Policy period**

the period from the inception date to the expiry date specified in Item 2 of the schedule.

3.33    **Pollutant**

any solid, liquid, gaseous, biological, radiological or thermal irritant, toxic or hazardous substance, or contaminant, including, but not limited to, asbestos, lead, smoke, vapour, dust, fibres, mould, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. Such waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

3.34    **Prosecution costs**

reasonable legal fees, costs and expenses, incurred by an **insured person** with the prior written consent of the **insurer,** to bring legal proceedings.

3.35    **Regulatory crisis New York costs**

reasonable fees, costs and expenses incurred in responding to a **critical regulatory event.**

3.36    **Retention**

the sum specified in Item 6 of the schedule.

3.37    **Retired insured person**

any **director, officer** or employee of a **company** who **retired** from that **company** before the expiry of the **policy period** and has not subsequently served in any **insured person** capacity of that **company.**

3.38    **Security**



B0723EI00943A17

any **security** representing debt of or equity interests in a **company**.

### 3.39 Shadow director

any natural person, who, as a consequence of being a **director, officer** or employee of any **company**, is deemed a **shadow director**, as defined in Section 251 of the **Companies Act 2006** or similar legislation in other jurisdictions, of any other **company**.

### 3.40 Submission

each and every signed proposal form, the statements, warranties, and representations therein; its attachments; the financial statements of and other documents of any **company** filed with a regulator and all other information submitted to the **insurer**.

### 3.41 Subsidiary

a **company** in which the **policyholder**, either directly or indirectly through one or more other entities:

(i)     controls the composition of the board of **directors**;

(ii)    controls more than half of the shareholder voting power; or

(iii)   holds more than half of the issued share capital.

on or before the inception date of this policy.

### 3.40 Third Party Wrongful Act

means any actual or alleged discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, veteran status, or disability); or harassment, (including but not limited to sexual harassment whether "quid pro quo", or otherwise) by any of the **insureds** against any natural person who is not an **insured person** or an applicant for employment of the **company**

### 3.42 Transaction

any one of the following events:

(i)     the **policyholder** consolidates with or merges into, or sells all or a majority of its assets to, any other person or entity or group of persons and/or entities acting in concert; or

(ii)    any person or entity, whether individually or together with any other person or persons, entity or entities becomes entitled to exercise more than 50% of the rights to vote at general meetings of the **policyholder** or control the appointment of **directors** who are able to exercise a majority of votes at meetings of the board of **directors** of the **policyholder**.

### 3.43 Wrongful act

any actual or alleged act, **employment practice violation, inappropriate employment conduct, harassment,** error or omission by the **company** or an **insured person** in any of the capacities listed in the definition of **insured person**; or any matter claimed against the **company** or an **insured person** solely because of such listed capacity.

AW_00007516



B0723EI00943A17

### 3.44 Wrongful detention

the arbitrary or capricious confinement of an **insured person,** while acting in the course of his employment by a **company,** by person(s) acting as agent(s) of, or with the tacit approval of, any government or governmental entity, or acting or purporting to act on behalf of any insurgent party, organisation or group. A connected series of **wrongful detentions** will be considered one **wrongful detention.**

## *4.    Exclusions*

The **insurer** shall not be liable to make any payment under any extension or in connection with any **claim:**

### 4.1    Conduct

arising out of, based upon or attributable to:

(i)    a **wrongful act** intended to secure or which does secure the gaining of profit or  advantage to which the **insured** was not legally entitled; or

(ii)    the intentional committing of

(a)    dishonesty or fraud; or

(b)    a criminal breach of law or regulation;

in the event that any of the above is established by final adjudication or non appealable adjudication of a judicial or arbitral tribunal, admission by the **insured** or written finding of a regulator.

Knowledge possessed by any **insured person** shall not be imputed to any other **insured**

### 4.2    Injury and property damage

for bodily injury, sickness, disease, death or emotional distress, or damage to, destruction, impairment of any property; provided, however, that any **claim** for emotional distress shall not be excluded with respect to an **employment practice violation.**

### 4.3    Prior claims and circumstances

arising out of, based upon or attributable to:

(i)    facts alleged or the same or related **wrongful act(s)** alleged or contained in any **claim** which has been reported or in any **circumstances** of which notice has been given under any policy of which this policy is a renewal or replacement or which it may succeed in time; or

(ii)    any pending or prior litigation as of the **continuity date,** or alleging or deriving from the same or essentially the same facts as alleged in the pending or prior litigation. For the purposes of this exclusion, the term 'litigation' shall include, but not be limited to, any civil or criminal proceeding as well as any administrative or regulatory proceeding or official **investigation** or arbitration or adjudication.

### 4.4    Pollution

for any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralise **pollutants** however, this exclusion shall not apply to **loss** under insurance covers 1.1 and 1.2

## *5.    General Provisions*

### 5.1    Discovery period



B0723EI00943A17

The **policyholder** must make any request for a **discovery period** in writing no later than 15 days after expiry of the **policy period**. A **discovery period** is not cancellable.

This policy affords to the **policyholder** a right to a **discovery period** if a **transaction** takes place; upon written request of the **policyholder**, the **insurer** will automatically provide a run-off **discovery period** of

   a)   3 years at an additional premium of 160% of the annual premium
      or

   b)   6 years at an additional premium of 200% of the annual premium.

### 5.2   Severability & reliance

For the purpose of determining the applicability of exclusion 4.1, Conduct, the information or knowledge possessed by any **insured person** shall not be imputed to any other **insured person**; and only information and knowledge possessed by any past, present or future chief executive **officer**, chief operating **officer**, chief financial **officer** or chief legal **officer** (or the equivalent positions) of a **company** shall be imputed to that **company**.

With respect to the **submission**, no statements made or knowledge possessed by any **insured person** shall be imputed to any other **insured** to determine whether cover is available for any **claim** made against such other **insured**.

### 5.3   Non-rescindable

The **insurer** irrevocably waives any right it may have to rescind this policy on the grounds of non-disclosure or misrepresentation.

### 5.4   Limit of liability

The **limit of liability** is the aggregate limit of the **insurer's** liability in respect of all insurance covers and extensions, except insurance cover 1.2 and extension 2.9. The per **non-executive director special excess limit** is a separate aggregate limit of the **insurer's** liability to each **non-executive director** under insurance cover 1.2 and it is in addition to, and not part of, the **limit of liability**. The **insurer** shall have no liability in excess of such limits irrespective of the number of **insureds** or **claims** made during the **policy period** or **discovery period**, including, **claims** or related **claims** which are accepted as made during the **policy period** pursuant to general provision 5.9.

Each sublimit of liability set forth in the policy is the most the **insurer** will pay in the aggregate under this policy as **loss** in respect of any insurance cover or extension to which it applies.

### 5.5   Retention

The **retention** is not applicable to **non-indemnifiable loss**. For **loss** of any **company**, or that any **company** has indemnified or has agreed to indemnify, the **insurer** shall be liable only for the amount of that **loss** which exceeds the **retention**. The **retention** is not part of the **insurer's** liability for **loss**. The **retention** is to be borne by the **companies** and shall remain uninsured. A single **retention** shall apply to all **loss** arising from any **claim** or series of **claims** arising out of, based upon or attributable to continuous, repeated or related **wrongful acts**.

If the **insurer** advances **loss** for which a **retention** applies, the **insureds** agree to repay the **insurer** immediately to the full extent the **retention** applies, once the **insurer** notifies the **insureds** of the **loss** so advanced.

### 5.6   Claims made & reported

The insurance covers under this policy are afforded solely with respect to **claims** first made against an **insured** during the **policy period** or an applicable **discovery period** or accepted as such pursuant to

alsford page & gems

B0723EI00943A17

general provision 5.7 and upon the condition that such **claims** have been reported to the **insurer** as soon as practicable, but in all events no later than either:

(i)      during the **policy period** or **discovery period**; or

(ii)     within 30 days after the end of the **policy period** or the **discovery period,**

**5.7     Claim notification**

All notifications relating to **claims** or **circumstances** must be in writing to to **insurers** Hiscox Attention Public D and O claims, 101 California Street, suite 4350,  San Francisco, california 94111 USA

Or Hiscox syndicate 33 ,using the following e mail address Lodonmarket  D and O claims@ hiscox.com

And

Alsford Page and Gems Ltd, Minories House, 2-5 Minories, London EC3N 1BJ

**5.8     Reporting circumstances**

Any **insured** may, during the **policy period** or **discovery period** notify the **insurer** at the above address of any **circumstance** reasonably expected to give rise to a **claim**. The notice must include the reasons for anticipating that **claim** and full particulars as to dates, acts and persons involved as soon as practicable

**5.9     Related claim, single claim**

Any **claim** made after expiry of the **policy period** (or applicable **discovery period**) which alleges, arises out of, is based upon or attributable to any fact alleged in, or **wrongful act** which is pertinent to:

(i)      a **claim** first made during the **policy period** (or applicable **discovery period**) or

(ii)     a **circumstance** reasonably expected to give rise to a **claim,**

which was reported to the **insurer** as required by this policy, will be accepted by the **insurer** as having been made at the same time as the notified **claim** was made or the **circumstance** was reported, and reported at the same time as the notified **claim** or **circumstance.**

Also, any **claim** or series of **claims** arising out of, based upon or attributable to continuous, repeated or related **wrongful acts** shall be considered a single **claim.**

**5.10    Defence and settlement of claims**

Each **insured** shall defend and contest any **claim** made against them. The **insurer** shall be entitled to participate fully in such defence and in the negotiation of any settlement that involves or appears reasonably likely to involve the **insurer.**

The **insurer** will accept as reasonable and necessary the **retention** of separate legal representation to the extent required by a material conflict of interest between any **insureds.**

If a **claim** is made against an **insured person** by the **policyholder**, the **insurer** shall have no duty or obligation to communicate with any other **insured person** or the **company** in relation to that **claim.**



B0723EI00943A17

### 5.11 Cooperation and fraudulent behaviour

All **insureds** must, at their own cost, render all reasonable assistance to and cooperate with the **insurer**. In the event of any **claim**, each **insured** shall take reasonable steps to mitigate **loss**. If any **insured** shall give any notice or assert cover for any **loss** under this policy knowing such notice or assertion to be false or fraudulent; or if an **insured**, prior to the inception of the **policy period**, had knowledge of a material misstatement in or omission from the **submission**; then, as to each such **insured**, this policy shall afford no cover.

### 5.12 Payment of defence costs

The **insurer** shall pay **defence costs** in excess of the **retention**, if applicable, covered by this policy promptly after sufficiently detailed invoices for those costs are received by the **insurer**. The **policyholder** shall reimburse the **insurer** for any payments which are ultimately determined not to be covered by this policy.

Each **company** will provide indemnification and advance **defence costs** to its **insured persons** to the extent not prevented due to legislative prohibition or insolvency, and at the **insurer's** request and expense, will make in good faith any application for court approval to provide such indemnification.

### 5.13 Priority of Payments

The **insureds** and the **insurer** hereby agree that the primary purpose of this Policy is to protect the interests of **insured persons**.

Therefore, in the event of **loss** arising from a **claim** or **claims** for which payment is due under the provisions of this Policy, the **insurer** shall:

(i)    firstly, pay such **loss** for which coverage is provided to the individual **insureds persons**; and

(ii)    secondly, pay such **loss** for which coverage is provided "to the **insured** entity" with respect to whatever remaining amount of the **limit of liability** is available after payment of such **loss**.

### 5.14 Consent

The **insurer** may settle any **claim** with respect to any **insured** that it deems expedient. No **insured** shall admit or assume any liability, enter into any settlement agreement, or consent to any judgment without the prior written consent of the **insurer**. Only judgments resulting from **claims** defended in accordance with this policy shall be recoverable as a **loss** under this policy. If any **insured** shall compromise or settle any **claim** or potential **claim** without the **insurer's** prior written consent, in a manner that limits or precludes recovery or recourse against such **insured** or assets of or in the possession of such **insured**, and expressly or effectively preserves for or provides to a claimant or potential claimant recourse against this policy or the **insurer**, this policy shall afford no cover in connection with that **claim** or potential **claim**.

### 5.15 Allocation

The **insurer** shall be liable only for **defence costs** or other **loss** derived exclusively from a covered **claim** against the **company** or an **insured person**.

In the event that any **claim** involves both covered matters and matters or persons not covered under this policy, a fair and proper allocation of any **defence costs**, judgments and/or settlements shall be made between the **company**, the **insured persons** and the **insurer** taking into account the relative legal and financial exposures attributable to covered matters and matters or people not covered under this policy.



B0723EI00943A17

### 5.16  Disputes between insurer and insureds

In the event that a determination as to the amount of **defence costs** to be advanced to any **insured** under this policy cannot be agreed to, then any obligation of the **insurer** to advance **defence costs** shall not exceed the amount which the **insurer** determines to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

A dispute between the **insurer** and the **policyholder** regarding any aspect of this policy which cannot be resolved by agreement between them within six months, shall be referred to a mutually agreed mediator. If the dispute remains unresolved after mediation, it shall be resolved by arbitration in the London Court of International Arbitration (LCIA).

### 5.17  Changes in Risk

Cover for any **claim** shall apply only for **wrongful acts** committed while the **insured person** serves in an **insured person** capacity.

The **insurers** hall not be liable to make any payment or to provide any services in connection with any **claim** arising out of, based upon or attributable to a **wrongful act** committed after the occurrence of a **transaction**.

### 5.18  Subrogation and cooperation

The **insurer** shall be subrogated to all **insureds'** rights of recovery, contribution and indemnity before or after any payment under this policy. The **insured persons** and **companies** shall do nothing to prejudice such rights. It shall be a condition to the obligations of the **insurer** that **insured persons** and **companies** will, at their own cost: (i) give the **insurer** full details of a reported **circumstance** or **claim** as soon as possible together with all relevant documents; and (ii) assist and cooperate with the **insurer** in the **investigation**, defence, settlement or appeal of a **claim** or reported **circumstance**. The **insurer** shall not exercise its rights of subrogation against an **insured person** in connection with a **claim** unless the **insurer** can establish that exclusion 4.1, conduct applies to that **claim** and that **insured person**.

### 5.19  Other insurance & indemnification

Insurance provided by this policy applies excess over valid and collectible insurance and indemnification available from any other source. The **insurer** will not pay the **loss** of an **insured person** arising out of a **wrongful act** in an **outside entity** capacity unless: (i) that **outside entity** is unable to indemnify that **loss** due to legislative prohibition or insolvency; and (ii) the **loss** is not covered or collectible under any other applicable, collectible insurance issued to the **outside entity** or for the benefit of its **directors, officers** or **employees**.

### 5.20  Notice and authority

The **policyholder** shall act on behalf of all **insureds** in connection with all matters relevant to this policy.

### 5.21  Assignment

Neither this policy nor any right hereunder may be assigned without written consent of the **insurer**.

### 5.22  Policy interpretation

Any interpretation of this policy or issue relating to its construction, validity or operation shall be determined by the laws of New York. No amendment to this policy will be effective unless it is written. Except as otherwise provided, the parties will submit to the exclusive jurisdiction of the courts of United States of America

This policy, its schedule and any endorsements are one contract in which, unless the context otherwise requires:

(i)     headings are descriptive only, not an aid to interpretation;



B0723EI00943A17

(ii)     singular includes the plural, and vice versa;

(iii)    the male includes the female and neuter;

(iv)    all references to specific legislation include amendments to and re-enactments of such legislation and similar legislation in any jurisdiction in which a **claim** is made; and

(v)     references to positions, offices or titles shall include their equivalents in any jurisdiction in which a **claim** is made.

### 5.23 Cancellation of the policy

This policy may not be cancelled except for non-payment of the premium.

### 5.24 Complaints

The **insurer** will do their best to resolve any difficulty directly with the **policyholder**, but if the **insurer** is unable to do this to the **policyholder**'s satisfaction, the **policyholder** may be entitled to refer the dispute to the Financial Ombudsman Service who will review the **policyholder**'s case and who may be contacted at:

Financial Ombudsman Service,
South Quay Plaza,
183 Marsh Wall
London,
E14 9SR.

e-mail: complaint.info@financial-ombudsman.org.uk, or telephone 0845 080 1800.



B0723EI00943A17

**Effective date of this Endorsement: 7th January 2016**
**This Endorsement is attached to and forms a part of UMR: B0723EI00943A16**

## INCREASED RETENTION FOR CORPORATE TAKEOVER OBJECTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

1.  *Directors' and Officers' Liability Insurance*

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1) Item 6. of the Schedule is deleted in its entirety and replaced with the following:
Each **Loss** from any **Claim**, except for **Non-Indemnifiable Loss**: USD100,000

Each **Loss** from any **Claim** arising from a **Corporate Takeover Objection**, except for **Non-Indemnifiable Loss**: $200,000

2) Clause **3. Definitions** is amended by the addition of:
1)
"**Corporate Takeover Objection**" means:

Any **Claim** in whole or in part based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual or proposed **Corporate Takeover**.

2. "**Corporate Takeover**" means:

3) 1.   the acquisition by any person or entity of more than fifty percent (50%) of the outstanding securities of the **Policyholder** representing the present right to vote for the election of directors; or

4) 2.   the merger of the **Policyholder** into another entity such that the **Policyholder** is not the surviving entity.

5)

All other terms and conditions of this Policy remain unchanged.



B0723EI00943A17

**OFFERING OF SECURITIES EXCLUSION**

**This endorsement modifies insurance provided under the following:**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause III. EXCLUSIONS is amended by the addition of:

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the registration or sale of any securities issued by the Company, subsequent to the inception date of this policy/ date tba, pursuant to the Securities Act of 1933, the Securities Exchange Act of 1934, rules or regulations of the Securities and Exchange Commission under either or both Acts, similar securities laws or regulations of any federal, state (including any state blue sky laws), local or any foreign jurisdiction, any other laws, rules, regulations or statutes regulating securities or any common law arising out of, involving, or relating to the ownership, purchase or sale of or offer to purchase or sell any securities of the Company, including any debt or equity securities, whether on the open market or through a public or private offering

.

**All other terms and conditions of this Policy remain unchanged.**
01/14
LSW4044

AW_00007524



B0723EI00943A17

**Closely-Held/Majority Shareholder& Exclusion**

It is hereby noted and agreed that Underwriters shall  not pay any **Loss** arising from any **Claim** made by or on behalf of any person or entity holding beneficially or otherwise more than 20% of the Issued share capital of the Company whether such **Claim** is made In the name of the Company or not.

**Breach of Professional Duty Exclusion**

Underwriters shall not be liable for any **Claim**, **Loss** or Investigation arising from a **Claim** based upon, attributable to or arising out of any **Claim** relating to a breach of or failure to provide professional duties or services.

This exclusion will not apply to a **Claim** by any of the **Insured's** shareholders Including any shareholder derivative proceedings the **Insured's** name without the **Insured** or any of the **Insured person's** voluntary solicitation, assistance or participation arising from any actual or alleged failure to supervise the performance of any professional services.



B0723EI00943A17

SANCTION LIMITATION AND EXCLUSION CLAUSE


No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.


LMA 3100

AW_00007526



B0723EI00943A17

SPECIAL CANCELLATION CLAUSE


In the event that any insurer:


(a)    ceases underwriting (wholly) or formally announces its intention to do so; or

(b)    is the subject of an order or resolution for winding up or formally proposes a scheme of    arrangement; or

(c)    has its authority to carry on insurance business withdrawn or modified; or

(d)    has its credit rating downgraded by a recognised rating agency; to below A –


the insured may terminate that insurers participation on this risk forthwith by giving notice and the premium payable to that insurer shall be pro rata to the time on risk.  In the event that there is a paid or reserved outstanding loss/circumstance no return of premium shall be due.


All other terms conditions and exclusions shall remain unchanged.

AW_00007527



B0723EI00943A17

WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.      war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.      any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01

NMA2918



B0723EI00943A17

NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:-

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This policy* does not apply:-

I.     Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a)    with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act 1954. or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage. or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a)    the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)    the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)    the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

"hazardous properties " include radioactive, toxic or explosive properties; "nuclear material " means source material, special nuclear material or by-product material; "source material," "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the

alsford page & gems

B0723EI00943A17

operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)     any nuclear reactor,

(b)     any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)     any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)     any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: -As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60

NMA1256

AW_00007530



B0723EI00943A17

RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64

NMA1477

AW_00007531



B0723EI00943A17

SMALL ADDITIONAL OR RETURN PREMIUMS CLAUSE (U.S.A.)

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this Insurance is written, it is understood and agreed that whenever an additional or return premium of $2 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

NMA1168

AW_00007532



B0723EI00943A17

SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

AW_00007533



B0723EI00943A17

## SECURITY DETAILS

(Re)Insurers Liability　　　　:　　(Re)Insurers Liability Clause: LMA3333

(Re)Insurer's liability several not joint:
The liability of a (Re)Insurer under this contract is several and not joint with
other (Re)Insurers party to this contract. A (Re)Insurer is liable only for the
proportion of liability it has underwritten.  A (Re)Insurer is not jointly liable for
the proportion of liability underwritten by any other (Re)Insurer.  Nor is a
(Re)Insurer otherwise responsible for any liability of any other (Re)Insurer
that may underwrite this contract.

The proportion of liability under this contract underwritten by a (Re)Insurer
(or, in the case of a Lloyd's syndicate, the total of the proportions
underwritten by all the members of the syndicate taken together) is shown
next to its stamp.  This is subject always to the provision concerning "signing"
below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than
the syndicate itself) is a (Re)Insurer. Each member has underwritten a
proportion of the total shown for the syndicate (that total itself being the total
of the proportions underwritten by all the members of the syndicate taken
together).  The liability of each member of the syndicate is several and not
joint with other members. A member is liable only for that member's
proportion.  A member is not jointly liable for any other member's proportion.
Nor is any member otherwise responsible for any liability of any other
(Re)Insurer that may underwrite this contract. The business address of each
member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of
each member of a Lloyd's syndicate and their respective proportion may be
obtained by writing to Market Services, Lloyd's, at the above address.

Proportion of liability:
Unless there is "signing" (see below), the proportion of liability under this
contract underwritten by each (Re)Insurer (or, in the case of a Lloyd's
syndicate, the total of the proportions underwritten by all the members of the
syndicate taken together) is shown next to its stamp and is referred to as its
"written line".

Where this contract permits, written lines, or certain written lines, may be

AW_00007534



B0723EI00943A17

adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (Re)Insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line".  The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

| | | |
|---|---|---|
| Order hereon | : | 100.00% whole. |
| Basis of written lines | : | Percentages of whole. |
| Signing provisions | : | In the event that the written lines hereon exceed 100% of the order, any lines written "To Stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement to any of the (Re)Insurers. |

However:

a)      in the event that the placement of the order is not completed by the commencement date of the period of insurance, then all lines written by that date will be signed in full;

b)      the reinsured may elect for the disproportionate signing of the (Re)Insurers' lines, without further specific agreement of the (Re)Insurers, providing that any such variation is made prior to the commencement date of the period of insurance, and that lines written "To Stand" can not be varied without the agreement of those (Re)Insurers;

c)      the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the agreement of the reinsured and all (Re)Insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (Re)Insurers have agreed, with the resulting

AW_00007535



B0723EI00943A17

variation in signed lines commencing from the date set out in that agreement.

| | | |
|---|---|---|
| B.I.P.A.R. Statement | : | In a co-(Re)Insurance placement, following (Re)Insurers may, but are not obliged to, follow the premium charged by the lead (Re)Insurer. (Re)Insurers may not seek to guarantee for themselves terms as favourable as those to which others subsequently achieve during the placement. |

AW_00007536



B0723EI00943A17

## SECURITY DETAILS

Attaching to and forming part of:

| | | |
|---|---|---|
| Insured | : | Constellation Healthcare Technologies Inc. |
| Type | : | Directors and Officers Insurance |
| Limit | : | USD 5,000,000 |
| Period | : | From 7th January 2017 to 7th January 2018  both days at 00.01 am local standard time at the insured's address |
| UMR | : | B0723EI00943A17 |

This section of the Contract is for (Re)Insurers to evidence their agreement to enter into their stated participation. The (Re)Insurer hereby agrees to the terms and conditions of this contract and allows the Intermediary to subsequently allocate a signed line, which is entered below and shall be separately notified to the (Re)Insurer. Any (Re)Insurer wishing to impose amendments or addition clauses to this Contract is reminded that such conditions of their participation must be fully claused without abbreviation and be relevant to this Contract.

Signed in:        London                    this  10th    day of    January              2017

For and on behalf of
Re(Insurer) and Reference:

Written Line(s):                              Final Signed Line(s): (Completed by Intermediary)

AW_00007537

alsford page & gems

B0723EI00943A17

**SUBSCRIPTION AGREEMENT**

| | | |
|---|---|---|
| Slip leader | : | Hiscox Lloyd's Syndicate 33 |

Basis of agreement to contract changes

: General Underwriters Agreement October 2001 with excess loss and treaty reinsurance schedule (October 2002).

Where details of agreed endorsements are required to be provided to following (Re)Insurers, email and/or facsimile and/or other means of transmission may be used at the discretion of Alsford Page & Gems Limited.

Other agreement parties for contract changes, for Part 2 GUA changes only

: Slip leader only to agree Part 2 changes.

Agreement parties for contract changes, for their proportion only

: None unless specified by (Re)Insurers hereon in this provision.

Basis of Claims Agreement

Claims to be managed in accordance with:

(i)   The Lloyd's Claims Scheme (Combined), or as amended or any successor thereto.

(ii)   IUA Claims Agreement Practices.

(iii)   The practices of any company(ies) electing to agree claims in respect of their own participation.

(iv)   Non-Bureau (Re)Insurers to agree claims, each in respect of their own participation only, subject to their own claims agreement procedures.

Claims agreement parties

: i)   For Lloyd's Syndicates:

The leading Lloyd's Syndicate and, where required by the applicable Lloyd's Claims Scheme, the second Lloyd's syndicate and/or the Scheme Service Provider.

The second Lloyd's Syndicate is THERE IS NO SECOND SYNDICATE

ii)   The companies acting in accordance with the IUA claims

AW_00007538



B0723EI00943A17

agreement practices, excepting those that may have opted out via
iii) below.

iii)   Those companies that have specifically elected to agree claims in
       respect of their own participation.

iv)    All other subscribing (Re)Insurers that are not party to the
       Lloyd's/IUA  claims agreement practices, each in respect of their
       own participation.

Claims administration        :   Alsford Page & Gems Limited shall enter claims advices into the relevant
                                 market CLASS system as appropriate.  All (Re)Insurers shall use their
                                 respective market CLASS system for claims agreement as appropriate.
                                 Non-bureaux (Re)Insurers shall receive notification of advice and
                                 settlement request by written communication.  All (Re)Insurers shall
                                 respond to claims matters via CLASS or by written communication.

                                 Where an electronic claim file is presented by Alsford Page & Gems
                                 Limited, (Re)Insurers agree to accept the electronic claim file for the
                                 agreement of claim advices and the payment of claim settlements and
                                 refunds.

                                 Where an electronic claim file exists, this will be the central record for all
                                 correspondence.

Rules and extent of any      :   The first Lloyd's (Re)Insurer subscribing to this contract may delegate its
other delegated claims           claims advice and/or claims settlement authority to Xchanging Claims
authority                        Services at their sole discretion.

Expert(s) fees collection    :   Xchanging Ins-sure Services "Experts Fees Service" shall be the service
                                 provider for all (Re)Insurers subscribing to this contract.

Settlement due date          :   5th March 2016

Instalment premium period    :   Not applicable
of credit

Adjustment premium period    :   Not applicable.
of credit



B0723EI00943A17

| | | |
|---|---|---|
| Bureau arrangements | : | Xchanging Ins-sure Services are authorised to accept Alsford Page & Gems Limited certification of figures without (Re)Insurers' prior agreement and without submission of the Reinsured's documents in respect of additional premiums, reinstatement premiums, premium adjustments, return premiums, profit commissions, no claims bonus, treaty statements, binding authority and line slip premiums. Xchanging Ins-sure Services are further authorised to take down simultaneous signings in respect of premium and claim submissions without (Re)Insurers' agreement. Where the settlement due date set by the relevant first (Re)Insurer falls on a weekend or a public holiday, then the next working day shall be taken to be the actual settlement due date. In such circumstances any signing submitted to Xchanging Ins-sure Services on this date shall not appear on the broker's monthly settlement performance as a late item. Premium payment requirements are deemed met subject to accounts being released for settlement to Xchanging Ins-sure Services in line with bureaux procedures on or before the settlement due date. Delinked accounts may be presented to Xchanging Ins-sure Services where required by and at the request of Alsford Page & Gems Limited. Settlement to be made in USD and/or GBP and/or EUR where applicable, or to be agreed by the Leading Underwriter only. |
| Non-bureau arrangements | : | Not applicable. |



B0723EI00943A17

**FISCAL AND REGULATORY**

| | | |
|---|---|---|
| Tax payable by (Re)Insurers | : | Nil. |
| Country of origin | : | USA |
| Overseas broker | : | Arc Excess and Surplus LLC<br>113 South Service Road<br>P.O. Box 9012<br>Jericho, NY  11753 |
| Surplus lines broker | : | Arc Excess and Surplus LLC<br>113 South Service Road<br>P.O. Box 9012<br>Jericho, NY  11753 |
| State of filing | : | Texas. |
| U.S. Classification | : | Surplus lines. |
| License Information | : | 1446355 |
| NAIC codes | : | Not applicable. |
| Allocation of premium to coding | : | 100.00% allocated to Risk Code – D2 |
| Regulatory client classification | : | Commercial |

AW_00007541



B0723EI00943A17

**BROKER REMUNERATION AND DEDUCTIONS**

| | | |
|---|---|---|
| Fee payable by client | : | No. |
| Total brokerage | : | 22.50% |
| Other deductions from premium | : | None. |

AW_00007542

## Contract Endorsement

| | |
|---|---|
| Unique Market Reference: | **B0180PD1700888** |
| Endorsement Reference: | **002** |
| Insured: | **Constellation Healthcare Technologies Inc.** |

### CONTRACT CHANGES

It is hereby noted and agreed that, with effect from 12.01 a.m. 7th January 2018 Local Standard Time, this Policy has been extended to expire at 12.01 a.m. 6th February 2018 Local Standard Time subject to no increase in the Policy Aggregate Limit of Liability.

The following Pro-Rata Additional Premium is now due:     **USD 5,342**

Settlement Due Date:          15th January 2018

Premium Payment Terms:     As per Premium Payment Warranty as follows:

### PREMIUM PAYMENT WARRANTY

IT IS HEREBY WARRANTED that the Pro-Rata Additional Premium due to Underwriters is paid no later than 15th January 2018.

*at 12:01 AM local*

Non-receipt by Underwriters of the Pro-Rata Additional Premium by 15th January 2018, ~~by midnight (local standard time)~~, shall render this ~~policy void with back to 12.01 a.m. 7th January 2018 Local Standard Time.~~ *standard time* *extension period void and coverage shall cease with effect from January 7th 2018 at 12:01 AM Local standard time*

*HS* 03 01 18

All other terms and conditions remain unchanged.

London Dated: 03 January 2018

### AGREEMENT

| GENERAL UNDERWRITERS AGREEMENT (GUA) | | |
|---|---|---|
| Each Underwriter's proportion is several not joint | | |
| Slip Leader Only | Slip Leader and Agreement Parties | All Underwriters |
| *HS* 03 01 18 Box 1 | Box 2 | Box 3 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Note: Where more than one insurer participates in the contract, the contract terms may mean that it is not always necessary to obtain a record of agreement to the Contract Endorsement from all of those insurers.

AW_00007846

## Contract Endorsement

| | |
|---|---|
| Unique Market Reference: | **B0180PD1700888** |
| Endorsement Reference: | **002** |
| Insured: | **Constellation Healthcare Technologies Inc.** |

### CONTRACT ADMINISTRATION AND ADVISORY SECTION

**Allocation of Premium
to Coding:**    Additional Premium allocated 100% to code D2.

All other terms and conditions remain unchanged.

### AGREEMENT

| GENERAL UNDERWRITERS AGREEMENT (GUA) | | |
|---|---|---|
| Each Underwriter's proportion is several not joint | | |
| Slip Leader Only | Slip Leader and Agreement Parties | All Underwriters |
| *HAS* 03 01 18 Box 1 | Box 2 | Box 3 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Note: Where more than one insurer participates in the contract, the contract terms may mean that it is not always necessary to obtain a record of agreement to the Contract Endorsement from all of those insurers.

AW_00007847

## Contract Endorsement

| | |
|---|---|
| Unique Market Reference: | B0723EI00943A17 |
| Endorsement Reference: | 003 |
| Insured: | Constellation Healthcare Technologies Inc. |

### CONTRACT CHANGES

It is hereby noted and agreed that, with effect from 12.01 a.m. 6th February 2018 Local Standard Time, in accordance with Item 9. Discovery Periods of the Schedule, the Insured has elected to purchase the 12 month Discovery Period, subject to no increase in the Policy Aggregate Limit of Liability.

| | | |
|---|---|---|
| Discovery Period: | From: | 6th February 2018 Local Standard Time at 00:01 a.m., at the mailing address of the Insured |
| | To: | 6th February 2019 Local Standard Time at 00:01 a.m., at the mailing address of the Insured |

The following Additional Premium is now due:    **USD 65,000**

Settlement Due Date:    23rd March 2018

Premium Payment Terms:    As per Premium Payment Warranty as follows:

### PREMIUM PAYMENT WARRANTY

IT IS HEREBY WARRANTED that the Additional Premium due to Underwriters is paid no later than 23rd March 2018.

Non-receipt by Underwriters of the Additional Premium by 23rd March 2018, by midnight (local standard time), shall render this Discovery Period void.

All other terms and conditions remain unchanged.

Information:  Email from AB Risk dated 31st January 2018 at 20:33

London Dated: 01 February 2018

---

### AGREEMENT

| GENERAL UNDERWRITERS AGREEMENT (GUA) | | |
|---|---|---|
| Each Underwriter's proportion is several not joint | | |
| Slip Leader Only | Slip Leader and Agreement Parties | All Underwriters |
| | | |
| Box 1 | Box 2 | Box 3 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**Note:** Where more than one insurer participates in the contract, the contract terms may mean that it is not always necessary to obtain a record of agreement to the Contract Endorsement from all of those insurers.

AW_00000035

# Contract Endorsement

| | |
|---|---|
| Unique Market Reference: | B0723EI00943A17 |
| Endorsement Reference: | 003 |
| Insured: | Constellation Healthcare Technologies Inc. |

## CONTRACT ADMINISTRATION AND ADVISORY SECTION

**Allocation of Premium to Coding:**   Additional Premium allocated 100% to code D2.

All other terms and conditions remain unchanged.

## AGREEMENT

| GENERAL UNDERWRITERS AGREEMENT (GUA) | | |
|---|---|---|
| Each Underwriter's proportion is several not joint | | |
| Slip Leader Only | Slip Leader and Agreement Parties | All Underwriters |
| Box 1 | Box 2 | Box 3 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

**Note:** Where more than one insurer participates in the contract, the contract terms may mean that it is not always necessary to obtain a record of agreement to the Contract Endorsement from all of those insurers.