UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re

Orion HealthCorp, Inc., *et al.*,

                            Debtors.

Case No.  18-71748-ast
(Jointly Administered)

Chapter 11

---------------------------------------------------------------X

Howard M. Ehrenberg, as liquidating Trustee
of the jointly administered bankruptcy estates
of Orion HealthCorp., Inc. and
Constellation Healthcare Technologies, Inc.,

                            Plaintiff,

v.

Allied World National Assurance Co.,

                            Defendant.

Case No. 8-21-08161-ast

---------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS OR
<u>STAY THE CLAIMS ASSERTED AND TO COMPEL ARBITRATION</u>**

Pending before the Court is a motion ("Motion") filed by Allied Word National Assurance Co. ("Allied World") seeking to dismiss or stay the complaint ("Complaint") of Howard M. Ehrenberg in his capacity as Liquidating Trustee (the "Trustee") of Orion Healthcorp, Inc. ("Orion"), Constellation Healthcare Technologies, Inc. ("CHT") and certain of their affiliated entities (collectively with Orion and CHT, "Debtors"). The Motion is filed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure ("Federal Rules") as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Section 3 of the Federal Arbitration Act ("FAA"). Allied World asserts that an insurance

1

policy at the heart of this dispute contains a broad mandatory arbitration provision and, therefore, the Court should require that the Trustee's claims be determined in arbitration.[1] [Dkt. No. 7]

After due deliberation and consideration, for the reasons to follow, the Court finds and concludes that the mandatory arbitration provision in the insurance policy does not apply to the parties and disputes involved in the Complaint and the Motion is accordingly denied.

## JURISDICTION AND VENUE

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 157 and 1334(b), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by Order dated December 5, 2012.

The issue of arbitrability is for the courts to decide, unless the parties stipulate otherwise and the evidence provided to show the parties' intent to have the arbitrator decide arbitrability is clear and unmistakable.[2] *See AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939, 115 S. Ct. 1920, 1921, 131 L. Ed. 2d 985 (1995).

Venue is properly placed in the Court and is consistent with 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

The factual background and procedural history are taken from the stipulated facts, [Dkt. No. 37] exhibits, docket entries and other papers submitted by the parties. There are no disputed, material facts.

---

[1] The Court notes that Allied World raises an affirmative defense of Rule12(b)(3), which provides for the dismissal of an action for improper venue. *See* Fed. R. Civ. P. 12(b)(3). However, Allied World has failed to brief this issue and the Court will therefore only rule on the motion to stay and compel arbitration under the FAA.

[2] The Court also notes that neither party has challenged the Court's jurisdiction to determine the issue of arbitrability.

***Background Factual Information***

While the parties submitted extensive information to this Court, only the facts directly relevant to the Motion are recounted below.

I.      Allied World's Excess Insurance Policy

Over a year prior to filing bankruptcy, CHT took out *Directors' and Officers' Liability Insurance* with insurer Hiscox Syndicate 33 (the "Primary Policy"). [Dkt. No. 37, Ex. A] The Primary Policy is defined as a Hiscox policy form underwritten by Lloyd's Syndicate 2623/623 Beazley ("Hiscox") with a Policy Number B0723EI00943A17 and limits of $5,000,000. [*Id.*] Under the Primary Policy, Hiscox agreed to pay the loss on behalf of an "insured person" due to any "wrongful act" for which "claims" were made and reported during the Primary Policy period of January 7, 2017, to January 7, 2018. [*Id.* at §§ 1.1, 5.6]

CHT also took out an *Excess Directors & Officers Liability Insurance Following Form Policy* prior to bankruptcy with Allied World with a policy number 0310-5162 (the "Excess Policy"). [Dkt. No. 37, Ex. B] The Excess Policy contains the following insurance coverage grant:

> The Insurer shall pay the individuals and entities insured under the Primary Policy (also referred to herein as the "Insured") for Loss after exhaustion by payments of all applicable underlying limits by either the Underlying Insurers as specified in Item 4 of the Declarations, the Insureds and/or any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy, subject to:
> A. the terms and conditions of the Primary Policy as in effect the first day of the Policy Period;
> B. the Limit of Liability as stated in Item 3 of the Declarations; and
> C. the terms and conditions of, and the endorsements attached to, this Policy.

[*Id.* at Endorsement No. 4] The parties agree that the Excess Policy is a "following form" policy and provides the same terms and conditions as the Primary Policy subject to any additional terms and conditions in the Excess Policy ("This Policy, except as herein stated, is subject to all terms, conditions, agreements and limitations of the Primary Policy in all respects as in effect on the date hereof."). [Dkt. No. 37, Ex. B at 1]

On March 16, 2018, CHT filed a petition for chapter 11 protection with this Court and subsequently was consolidated with Orion and other debtors.[3] [Bankr. Dkt. No. 3] The Trustee succeeded to all rights and claims of the Debtors pursuant to a confirmed plan of reorganization. [Bankr. Dkt. No. 701]

## II.     The Arbitration Provisions

The Primary Policy contains an arbitration provision that states:

> A dispute between the **insurer** and the **policyholder** regarding any aspect of this policy which cannot be resolved by agreement between them within six months, shall be referred to a mutually agreed mediator. If the dispute remains unresolved after mediation, it shall be resolved by arbitration in the London Court of International Arbitration (LCIA).

[Dkt. No. 37, Ex. A at § 5.16] (emphasis in original) (the "Arbitration Provision"). The bolded terms, "insurer" and "policyholder," are defined in the Primary Policy. "Insurer" is defined by reference to the declarations page, "as specified in Item 11 of the Schedule," which names "Hiscox Syndicate 33" as the only entity that constitutes an "insurer" under the language of the policy. [Dkt. No. 37, Ex. A at § 3.19] "Policyholder" is defined as "the organisation specified in Item 1 of the schedule," or "Constellation Healthcare Technologies Inc." [*Id.* at § 3.31] Directors and officers are not included in the Primary Policy's definition of "policyholder." Instead, the Primary Policy defines "Director or Officer" as "any natural person director or officer of a

---

[3] Docket references to Debtor's main bankruptcy case, Case No. 8-18-71748-ast, are cited as "[Bankr. Dkt. No. __]".

company" and includes the defined "Director or Officer" under "Insured Persons." [*Id.* at §§ 3.10, 3.18]

Allied World expressly deleted its preprinted arbitration provision and instead adopted the Arbitration Provision from the Primary Policy.[4] The parties here have agreed that Allied World's intent in the Excess Policy was to adopt the Arbitration Provision in the Primary Policy. "It is understood and agreed that Clause II., TERMS AND CONDITIONS, is amended by deleting paragraph I., ALTERNATIVE DISPUTE RESOLUTION PROCESS, in its entirety." [Dkt. No. 37, Ex. B at Endorsement No. 6] Thus, as with the Primary Policy, the Excess Policy does not include "Directors or Officers" within the scope of "Policyholder."

III. The Underlying Shareholder and Director and Officer Actions

Various adversary proceedings followed the filing of the Debtors' bankruptcy petitions. On March 29, 2018, CHT and other debtors commenced an adversary proceeding seeking to recover actual and constructive fraudulent transfers allegedly distributed to a number of entities prior to the Chapter 11 case. [Bankr. Dkt. No. 59] After his appointment, the Trustee filed a Second Amended Complaint on March 12, 2020, naming several of the non-executive directors and officers as defendants (the "Underlying Shareholder Complaint" or "Underlying Shareholder

---

[4] The preprinted arbitration provision that was in the Excess Policy, but which Allied World deleted, states in relevant part:

> Any and all disputes or differences which may arise under this Policy, whether arising before or after termination of this Policy, including any determination of the amount of Loss or the formation and validity of this Policy, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.
>
> Either the Insurer or the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

[Dkt. No. 37, Ex. B at 3]

5

Action"). [Dkt. No. 37, Ex. D] The Underlying Shareholder Complaint alleged, *inter alia*, that certain defendant directors and officers had improperly received payments and financial benefits in connection with a pre-petition merger, that has been made the subject of numerous adversary proceedings, and claims including constructive, intentional, and actual fraudulent transfers and payment of illegal dividends. [*See id.*]

The most pertinent suit for this Excess Policy dispute is an adversary proceeding against CHT's directors and officers commenced by the Trustee on March 13, 2020, asserting the following causes of action against them: (1) breach of fiduciary duties regarding several challenged acquisitions of entities allegedly to inflate the valuation of the company; (2) breach of fiduciary duties resulting from the go-private merger; and (3) negligence ("Underlying D&O Complaint" and, collectively with the Underlying Shareholder Complaint, "Underlying Complaints," or "Underlying D&O Action" and, collectively with the Underlying Shareholder Action, "Underlying Actions"). [Dkt. No. 37, Ex. E]

IV.     Allied World's Denial of Coverage

Hiscox and Allied World were provided notice by CHT of "Claims and Circumstances reasonably expected to give rise to Claims against the Insured and Insured Persons under the Policies" by letter dated January 4, 2018 ("January 4, 2018 Notice"). [Dkt. No. 37, Ex. C] The January 4, 2018 Notice advised both Hiscox and Allied World of potential claims against the directors and officers, including (1) failure to adequately supervise management in connection with various transactions and decisions; (2) failure to fulfill the duty of loyalty by both management and the members of the board of directors by engaging in self-interested transactions; (3) failure to fulfill the duty of care by being reasonably informed of transactions contemplated and consummated by CHT; (4) failure to make due inquiry into transactions

6

contemplated and consummated by CHT; and (5) failure to adequately consider the impact of transactions on CHT's stakeholders. [*Id*. pp. 2-3]

On January 12, 2021, this Court ordered mediation of the Underlying Shareholder Action between the Trustee and certain shareholder defendants.[5] [SH Adv. Pro. Dkt. No. 495] On March 2, 2021, Allied World denied coverage, relying on Endorsement No. 2 of the Primary Policy, or the "Prior Acts Exclusion" clause. [Dkt. No. 37, Ex. F] This clause states:

> This Policy shall not cover any Loss in connection with any claim alleging, arising out of, based upon, or attributable to any wrongful act(s) committed, attempted, or allegedly committed or attempted prior to January 7, 2017.
>
> This Policy shall provide coverage only with respect to wrongful acts occurring on or after January 7, 2017 and prior to the end of the Policy Period and otherwise covered under the terms and conditions of this Policy.

[Dkt. No. 37, Ex. B at Endorsement No. 2]

The parties held the first mediation session on March 3, 2021. The mediation sessions subsequently became broader in scope to encompass both the Underlying Shareholder Action and the Underlying D&O Action. A second mediation session was held on April 21, 2021, and a third mediation session was held on June 11, 2021. Allied World participated in part but not in all of these mediations.

As a result of the mediations, the Trustee, Hiscox, and the directors and officers entered into a settlement agreement (the "Settlement Agreement") which, *inter alia*, fixed the liability of the directors and officers at $18,500,000 for the claims asserted in the Underlying D&O Complaint and provided that certain directors would be dismissed from the Underlying Shareholder Complaint. [Dkt No. 37 Ex. I] Allied World is not a party to the Settlement

---

[5] Docket references to the Underlying Shareholder Action, Case No. 8-18-08048-ast, are cited as "[SH Adv. Pro. Dkt. No. __]".

Agreement. The Settlement Agreement also contained a provision wherein the Trustee agreed not to attempt to enforce the Settlement Agreement against the personal assets of the directors and officers in consideration for payment of the Primary Policy proceeds and an assignment to the Trustee of any claims the directors and officers held against Allied World. [*Id.*]

On or about October 18, 2021, the Trustee filed a motion seeking approval of the Settlement Agreement between the Trustee, the directors and officers and Hiscox (the "Settlement Motion to Approve"). [Bankr. Dkt. No. 1018] Allied World did not object to the Settlement Motion to Approve.

On or about December 16, 2021, the Court granted the Settlement Motion to Approve and found, *inter alia*, that the Settlement Agreement was "reasonable and entered into in good faith and at arm's length." [Bankr. Dkt. No. 1024] As such, any and all rights and claims held by the directors and officers arising from the Primary Policy and/or the Excess Policy, including those claims against Allied World relating to its conduct and its decision to deny coverage for the Underlying D&O Action, were assigned to the Trustee. [Dkt. No. 37, Ex. I]

*Procedural History*

On December 20, 2021, the Trustee, solely as assignee of the directors and officers, commenced this adversary proceeding against Allied World alleging claims of breach of insurance contract, breach of the implied covenant of good faith and fair dealing, and for declaratory relief. [Dkt. No. 1]

On February 18, 2022, Allied World filed the Motion. [Dkt. No. 7]

On March 21, 2022, the Trustee filed opposition to the Motion. [Dkt. No. 15]

On April 4, 2022, Allied World filed a Reply. [Dkt. No. 24]

During these proceedings, Allied World affirmatively represented that it is not seeking to upset or attack the Settlement Agreement.

On November 30, 2022, after a pre-trial conference, this Court assigned this adversary proceeding to mediation ("Mediation Order"). [Dkt. No. 34]

On January 12, 2023, the Trustee and Allied World filed a *Joint Stipulation Setting Forth Any Stipulated Facts or Issues and Any Issues Needing Decision* (the "Joint Stipulation"). [Dkt. No. 37]

On January 17, 2023, the parties submitted supplemental briefing to the Joint Stipulation. [Dkt. Nos. 38-40]

On March 15, 2023, the Trustee filed a letter in accordance with the Mediation Order informing the Court that the parties participated in a full-day private mediation but that the parties did not settle. [Dkt. No. 43]

## DISCUSSION

*Legal Standard*

Under the FAA, a federal court must stay proceedings if it finds a valid arbitration agreement exists and may compel arbitration when a party refuses to comply with that agreement. *See* 9 U.S.C. §§ 2–4; *see also Burns v. New York Life Ins. Co.*, 202 F.3d 616, 620 (2d Cir. 2000) (The FAA "requires a federal court to enforce arbitration agreements and to stay litigation that contravenes them.") (citation omitted). "The FAA signifies a 'congressional declaration of a liberal federal policy favoring arbitration agreements,' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 197 (Bankr. S.D.N.Y. 2002) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). However, "[l]ike any statutory directive, the [FAA's] mandate may be

9

overridden by a contrary congressional command." *Id.* at 198 (*quoting Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)).

The Supreme Court has addressed arbitration agreements again in recent years and has essentially determined they are to be to be construed like any other contract. *See e.g., Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713, 212 L.Ed.2d 753, (2022) ("[A] court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation."); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)) ("The policy is to make arbitration agreements as enforceable as other contracts, but not more so.").

Accordingly, a bankruptcy court faced with a motion to compel arbitration is to apply a four-part test:

> [F]irst, it must determine whether the parties agree to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*In re MF Glob. Holdings Ltd.*, 571 B.R. 80, 89–90 (Bankr. S.D.N.Y. 2017) (*quoting Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 789 (Bankr. S.D.N.Y. 2008)).

After applying the four-part test, if the dispute is determined to be subject to arbitration, this Court has the discretion to determine whether compelling arbitration would present a conflict between the FAA and the Bankruptcy Code. *See e.g., Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital, LLC)*, 563 B.R. 756, 767 (Bankr. S.D.N.Y. 2016). "The Second Circuit has recognized that a Bankruptcy Court has discretion to decline to

compel arbitration when a conflict exists 'between the Bankruptcy Code, which favors centralization of disputes concerning a debtor's estate, and the Arbitration Act, which advocates a decentralized approach to dispute resolution.'" *In re Winimo Realty Corp.*, 270 B.R. 108, 118 (S.D.N.Y. 2001) *(quoting Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 165 (2d Cir. 2000)). Courts typically undertake a two-step inquiry to evaluate whether to exercise this discretion, but only if a conflict exists. *See Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 387 (2d Cir. 2018). First, the court must determine "whether the issue involves a 'core' or 'non-core' proceeding." *Id.* Second, if the matter is core, and the court "determines that arbitration would create a 'severe conflict' with the purposes of the Bankruptcy Code, it has discretion to conclude that 'Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements.'" *Id.* (*quoting MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006)). In other words, the court must "assess whether Congress intended for this statutory right to be non-arbitrable, such that the bankruptcy court had the discretion to refuse to compel arbitration in this core bankruptcy proceeding." *Id.* at 388.

*Analysis*

When determining whether to compel arbitration, the first step is to determine whether there was an agreement to arbitrate the claims at issue. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). While the FAA favors arbitration, it "does not require the parties to arbitrate when they have not agreed to do so." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

Here, there is no agreement to arbitrate the claims at issue between the parties involved. As noted, Allied World removed their own preprinted arbitration provision and incorporated the Arbitration Provision of the Primary Policy, which states:

> [a] dispute between the **insurer** and the **policyholder** regarding any aspect of this policy . . . shall be resolved by arbitration in the London Court of International Arbitration (LCIA).

[Dkt. No. 37, Ex. A at § 5.16] (emphasis in original)

Under New York law, "words should be given the meanings ordinarily ascribed to them and absurd results should be avoided. The meaning of particular language ... should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes." *SR Int'l Bus. Ins. Co. v. Allianz Ins. Co., L.L.C.*, 343 Fed.Appx. 629, 632 (2d Cir. 2009) (internal quotation and citation omitted). The "cardinal principle for construction and interpretation of ... all contracts ... is that the intentions of the parties should control. Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 104 (2d Cir. 2006) (*quoting World Trade Ctr. Props., LLC v. Hartford Fire Ins. Co.,* 345 F.3d 154, 184 (2d Cir.2003)).

The fact the Excess Policy incorporated provisions and clauses from the Primary Policy does not create any ambiguities and the Court finds both insurance policies and, more specifically, the Arbitration Provision incorporated in the Excess Policy to be clear and unambiguous.

While the Arbitration Provision broadly covers any dispute "regarding any aspect of this policy," the parties covered by the Arbitration Provision is considerably narrower. The Arbitration Provision only covers disputes between the insurer and the policyholder. "Insurer" is

defined at §3.19 in the definitions section of the Primary Policy by reference to the declarations page, "as specified in Item 11 of the Schedule," which states "Hiscox Syndicate 33." Because the Arbitration Provision has been incorporated into the Allied World Excess Policy, the "insurer" can be construed as Allied World rather than Hiscox.

"Policyholder" is defined at §3.31 in the definitions section of the Primary Policy as "the organisation specified in Item 1 of the schedule," or "Constellation Healthcare Technologies Inc." Because CHT is the policyholder in the Excess Policy, this defined term remains the same. Substituting in the contractual definitions of the defined terms, the Arbitration Provision only covers disputes between Allied World and CHT regarding any aspect of the Excess Policy.

However, the dispute presently before this Court is between Allied World and the directors and officers, even though the Trustee is bringing those claims as assignee. The Trustee is the assignee of the directors' and officers' claims against Allied World as set out in the Settlement Agreement which was approved by this Court. The officers and directors are thus suing Allied World for breach of its duties allegedly arising under the Excess Policy. Therefore, under the defined terms of the Excess Policy, the dispute presently before the Court is between the "insurer" and the "insured" and thus not included within the scope of the Arbitration Provision; the directors and officers are not included in the definition of "policyholder".

The cases relied upon by Allied World, while dealing with the issue of compelling arbitration, center on arbitration provisions with different provisions governing the parties covered by the arbitration clause.

For example, in *In re MF Global Holdings Ltd.*, the court compelled arbitration pursuant to a clause, which stated "[a]ny and all disputes arising under or relating to this policy, including its formation and validity, and whether between the Insurer and *the Named Insured or any*

13

*person or entity deriving rights through or asserting rights on behalf of the Named Insured.*" 571 B.R. 80, 87 (Bankr. S.D.N.Y. 2017) (emphasis added). The Arbitration Provision in this case does not include such extensive language regarding the parties to disputes that are covered. Further, the court notes that Allied World chose to remove its own arbitration provision to incorporate the more limited Primary Policy provision.

In conclusion, the Arbitration Provision, as incorporated in the Excess Policy from the Primary Policy, compels the arbitration of disputes between Allied World and CHT but does not compel the arbitration of disputes between Allied World and the CHT directors and officers. Because the first part of the test has not been met, the Court need not consider the three remaining parts of the test.

In addition, the question of whether compelling arbitration would present a "severe conflict" between the FAA and the Bankruptcy Code, and the application of the two-part test as stated in *Anderson*, is not required since the Arbitration Provision does not apply to the present dispute.

## CONCLUSION

For the foregoing reasons, the Motion is denied. Allied World is directed to file an answer within twenty-one (21) days of this Order being entered.

Dated: May 10, 2023
Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge