```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                                              Chapter 11
                                                                    Case No.: 8-18-71748-AST
Orion Healthcorp, Inc.

                          Debtor.
---------------------------------------------------------------X
Howard M. Ehrenberg, as liquidating Trustee
of the jointly administered bankruptcy estates
of Orion HealthCorp., Inc. and Constellation
Healthcare Technologies, Inc.,

                          Plaintiff,                                Adv. Pro. No.: 8-21-08161-AST
        -against-

Allied World National Assurance Co.,

                          Defendant.
---------------------------------------------------------------X
```

**DECISION & ORDER GRANTING IN PART AND DENYING IN PART PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court is the motion for summary judgment filed by Howard M. Ehrenberg, as liquidating Trustee of the jointly administered bankruptcy estates of Orion HealthCorp., Inc. and Constellation Healthcare Technologies, Inc. (the "Trustee" or "Plaintiff") and the cross motion for summary judgement filed by Allied World National Assurance Co. ("Allied World" or "Defendant"). In his motion for summary judgement (the "Trustee's Motion"), the Trustee seeks summary judgement on his first cause of action for breach of insurance contract and third cause of action for declaratory relief. In their cross motion for summary judgement ("Allied World's Cross Motion"), Allied World seeks the dismissal of all of the Trustee's causes of action.

1

For the reasons stated below, the Court grants partial summary judgement to the Trustee on (1) the first cause of action for breach of insurance contract as it pertains to the D&O Action[1] and (2) declaratory relief that (a) Allied World's obligations under the Excess Policy[2] have bene triggered by the exhaustion of the Primary Policy[3] and (b) the Excess Policy provides coverage for the D&O Action. The Court grants partial summary judgement to Allied World, dismissing the Trustee's claim for breach of the implied covenant of good faith and fair dealing, or bad faith. All other issues, including damages, are reserved for time of trial.[4]

## I. JURISDICTION AND VENUE

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (I) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

---

[1] For the definition of "D&O Action" *see infra* p. 5.
[2] For the definition of "Excess Policy" *see infra* p. 3.
[3] For the definition of "Primary Policy" *see infra* p. 3.
[4] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties and the public dockets in this case. Local Bankruptcy Rule 7056-1 requires that a party seeking summary judgment file a statement of facts the party alleges to be without a genuine dispute, and that each fact be supported by a citation to admissible evidence in the summary judgment record as required by Rule 56(c) of the Federal Rules. See FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1. Similarly, facts alleged by a party opposing summary judgment must be set out in a LBR 7056-1 statement supported by admissible testimonial or documentary evidence, and with citation to conflicting testimonial or documentary evidence as required by Rule 56(c); a party may not simply deny alleged material facts by a conclusory statement, or without citation to admissible evidence. This Court has not considered any fact alleged by either party which is not properly sourced or supported. This Court has also accepted as true properly supported facts alleged by either party which have not been properly refuted or challenged by Plaintiff or Defendant. See FED. R. CIV. P. 7056(e); E.D.N.Y. LBR 7056-1; *Meredith Corp. v. Sesac, LLC*, 1 F. Supp. 3d 180, 186 n.3 (S.D.N.Y. 2014).
    The summary judgement record includes the Trustee's Motion for Summary Judgement [Dkt. No. 84] and supporting Memorandum of Law [Dkt. No. 85] and Declaration of Benjamin R. Fliegel, Esq. [Dkt. No. 86], the Trustee's Statement of Material Facts [Dkt. No. 87], Allied World's Motion for Summary Judgement [Dkt. No. 89] and supporting Memorandum of Law [Dkt. No. 90], Declaration of Emily S. Hart, Esq. [Dkt. No. 91], and Declaration of Thomas Zona [Dkt. No. 92], Allied World's Memorandum of Law in Opposition to the Trustee's Motion for Summary Judgement [Dkt. No. 95] and supporting Declaration of Joseph Girdusky [Dkt. No. 96], Allied World's Response to the Trustee's Statement of Material Facts [Dkt. No. 97], the Trustee's Memorandum of Law in Opposition to Allied World's Motion for Summary Judgement [Dkt. No. 99], the Trustee's Statement/Counterstatement of Material Facts [Dkt. No. 101], Allied World's Response to Plaintiff's Additional Material Facts [Dkt. No. 103], and the parties' Joint Statement of Material Facts [Dkt. No. 108].

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

#### 1. *Insurance Policies*

Hiscox Syndicate 33 ("Hiscox") issued Directors, Officers and Company Liability Insurance Policy No. B0723EI00943A17 to Constellation Healthcare Technologies, Inc. ("CHT") with a $5,000,000 limit of liability (the "Primary Policy"). [Dkt. No. 37, Ex. A]. The Primary Policy provides coverage for "claims" first made against "insureds" and reported between January 7, 2017 and February 6, 2018 (the "Policy Period"). *Id*. "Insured" is defined as "the company and any plan sponsored by the company or an insured person." *Id.*; Joint Statement of Material Facts (the "Joint Statement") ¶ 3 [Dkt. No. 108]. The "company" is CHT and its subsidiaries, and "insured person" includes CHT's directors and officers and employees "while acting in a managerial or supervisory capacity" at CHT or a subsidiary "with respect to a claim alleging an employment violation" or "named as a co-defendant with a director or officer of a company in a claim in which such employee is alleged to have participated or assisted in the commission of a wrongful act." *Id.*; Joint Statement ¶ 7.

Allied World issued Excess Directors & Officers Liability Insurance Following Form Policy to CHT for the same Policy Period (the "Excess Policy"). [Dkt. No. 37, Ex. B]. The Excess Policy has a $5,000,000 limit of liability in excess of the Primary Policy's $5,000,000 limit of liability. *Id.* The Excess Policy provides: "This Policy, except as herein stated, is subject to all terms, conditions, agreements and limitations of the Primary Policy in all respects as in effect on the date hereof[.]" *Id.*; Joint Statement ¶ 18.

The Excess Policy was amended by the following endorsement:

> This Policy shall not cover any Loss in connection with any claim alleging, arising out of, based upon, or attributable to any wrongful act(s) committed, attempted, or

allegedly committed or attempted prior to January 7, 2017. This Policy shall provide coverage only with respect to wrongful acts occurring on or after January 7, 2017 and prior to the end of the Policy Period and otherwise covered under the terms and conditions of this Policy.

[Dkt. No. 37, Ex. B]; Joint Statement ¶ 19 (the "Prior Acts Exclusion).

The Primary Policy includes a pending or prior litigation exclusion, which provides in pertinent part:

The insurer shall not be liable to make any payment under any extension or in connection with any claim: arising out of, based upon or attributable to: . . . any pending or prior litigation as of the continuity date, or alleging or deriving from the same or essentially the same facts as alleged in the pending or prior litigation. For the purposes of this exclusion, the term 'litigation' shall include, but not be limited to, any civil or criminal proceeding as well as any administrative or regulatory proceeding or official investigation or arbitration or adjudication

[Dkt. No. 37, Ex. B]; Joint Statement ¶ 12 (the "Pending or Prior Litigation Exclusion").

The Excess Policy incorporates the Primary Policy's Pending or Prior Litigation Exclusion. Specifically, the Excess Policy provides:

This Policy shall follow any exclusion in the Primary Policy regarding pending or prior litigation, administrative, regulatory or other proceedings, investigations, demands, suits, orders, decrees or judgments. The applicable date for determining whether any such matter is "pending or prior" for the purpose of such exclusion in this Policy shall be the Pending or Prior Date set forth in Item 5 of the Declarations.

[Dkt. No. 37, Ex. B]; Joint Statement ¶ 20.

The "pending or prior" date is designated as January 7, 2017. *Id.* Accordingly, the relevant "continuity date" for the Pending or Prior Litigation Exclusion, as incorporated in the Excess Policy is January 7, 2017.

On March 16, 2018, CHT filed a petition for chapter 11 protection with this Court and subsequently was consolidated with Orion HealthCorp., Inc. ("Orion") and other debtors.[5] [Bankr.

---

[5] Docket references to Debtor's main bankruptcy case, Case No. 8-18-71748-ast, are cited as "[Bankr. Dkt. No.__]".

4

Dkt. No. 3] The Trustee succeeded to all rights and claims of the Debtors pursuant to a confirmed plan of reorganization. [Bankr. Dkt. No. 701]

2. *Underlying Actions*

On December 27, 2016, CHT shareholders, including Destra Targeted Income Unit Investment Trust, commenced a lawsuit in Delaware Chancery Court captioned *Destra Targeted Income Unit Investment Trust, on behalf of Unitholders, et al. v. Parmjit Singh Parmar (a.k.a. Paul Parmar), et al.*, Del. Ch. No. 13006-VCL (the "Destra Action") against Parmjit Singh Parmar, the CEO of CHT, ("Parmar") and various entities that Parmar directly or indirectly owned and controlled. [Dkt. No. 91, Ex. C]. The Destra Action asserted eleven causes of action related to the merger between CHT and CC Capital Management LLC ("CC Capital") (the "Merger"), including, but not limited to, breach of fiduciary duties, breach of operating agreement, fraudulent transfers, conversion, unjust enrichment, and civil conspiracy and fraud.

On March 12, 2020, the Trustee commenced an adversary proceeding against former directors and officers of CHT and Orion (the "D&O Defendants"), captioned *Ehrenberg v. Johnston*, Adv. Pro. No. 8-20-08046 (the "D&O Action") [Dkt. No. 37, Ex. E] (collectively with the Destra Action, the "Actions"). The D&O Action asserted three causes of action: (1) breach of fiduciary duties regarding several acquisitions of entities allegedly to inflate the valuation of the company; (2) breach of fiduciary duties arising out of the Merger; and (3) negligence.[6] *Id*.

3. *Notice, Mediation, and Settlement*

On January 4, 2018, CHT provided Hiscox and Allied World with notice of "Claims and Circumstances reasonably expected to give rise to Claims against the Insured and Insured Persons

---

[6] On March 29, 2018, CHT filed an adversary proceeding against CHT shareholders captioned *Ehrenberg v. Griffiths*, Adv. Pro. No. 18-08084 (the "Griffiths Action"). CHT shareholders do not qualify as "insureds" under the Excess Policy. Accordingly, this Court does not reach the issue of whether the Griffiths Action was covered under the Excess Policy.

5

under the Policies" (the "January 4, 2018 Notice"). Joint Statement ¶ 98. The January 4, 2018 Notice advised Hiscox and Allied World of potential claims against CHT's directors and officers, including: (1) failure to adequately supervise management in connection with various transactions and decisions; (2) failure to fulfill the duty of loyalty by both management and the members of the board of directors by engaging in self-interested transactions; (3) failure to fulfill the duty of care by being reasonably informed of transactions contemplated and consummated by CHT; (4) failure to make due inquiry into transactions contemplated and consummated by CHT; and (5) failure to adequately consider the impact of transactions on CHT's stakeholders. *Id*.; Joint Statement ¶ 99.

On January 12, 2021, this Court ordered mediation of the D&O Action between the Trustee and certain CHT shareholder defendants.[7] [D&O Adv. Pro. Dkt. No. 495].

On March 2, 2021, Allied World's counsel sent a letter to CHT denying coverage (the "Denial Letter"), citing the Prior Acts Exclusion and Pending or Prior Litigation Exclusion as the bases of their denial. [Dkt. No. 37, Ex. F]; Joint Statement ¶ 104. The Denial Letter stated: "Allied World did not receive notice from any Insured of the [Griffiths] or [D&O] Actions until February 10, 2021." *Id.*

Mediations sessions were held on March 3, April 21, and June 11, 2021, and broadened to encompass both the D&O Action and the Destra Action. Allied World participated in some but not all mediation sessions.

As a result of the mediation sessions, the Trustee, Hiscox, and CHT's directors and officers entered into a settlement agreement (the "Settlement Agreement") which, *inter alia*, fixed the liability of CHT's directors and officers at $18,500,000 (the "Settlement Amount") for the claims asserted in the D&O Complaint and provided that certain CHT directors would be dismissed from

---

[7] Docket references to the D&O Action, Case No. 8-18-08048-ast, are cited as "[D&O Adv. Pro. Dkt. No. __]"

the Destra Action. [Dkt. No. 37, Ex. I]. Additionally, the Settlement Agreement (1) provided that the Trustee would not enforce the Settlement Agreement against the personal assets of CHT's directors and officers in consideration for receipt of the Primary Policy proceeds and (2) assigned to the Trustee any claims CHT's directors and officers held against Allied World. *Id.* Allied World is not a party to the Settlement Agreement. Hiscox exhausted the limits of the Primary Policy in accordance with the Settlement Agreement by paying $1,307,113.47 in defense costs and $3,692,886.53 towards the Settlement Amount. Joint Statement ¶ 124.

On October 18, 2021, the Trustee filed a motion to authorize/direct the entry of an order to approve the Settlement Agreement. [Bankr. Dkt. No. 1018]. On December 16, 2021, the Court approved the Settlement Agreement, finding, *inter alia*, that the Settlement Agreement was "reasonable and entered into in good faith and at arm's length." [Bankr. Dkt. No. 1024]. Allied World had notice of the Trustee's motion, and did not object to the settlement. See Affidavit/Certificate of Service Filed by Benjamin R. Fliegel on behalf of the Trustee [Bankr. Dkt. No. 1019],

B. **Procedural History**

On December 20, 2021, the Trustee, solely as assignee of CHT's directors and officers, commenced this adversary proceeding against Allied World alleging claims of breach of insurance contract, breach of the implied covenant of good faith and fair dealing, or bad faith, and for declaratory relief. [Dkt. No. 1].

On February 18, 2022, Allied World filed a Motion to Dismiss this adversary proceeding or Stay and Compel Arbitration (the "Motion to Dismiss"). [Dkt. No. 7]. Allied World affirmatively represented that it was not seeking to upset or attack the Settlement Agreement.

7

On November 30, 2022, after a pre-trial conference, this Court assigned this adversary proceeding to mediation (the "Mediation Order"). [Dkt. No. 34]. On March 15, 2023, the Trustee filed a letter in accordance with the Mediation Order, informing this Court that the parties participated in a full-day private mediation but did not settle. [Dkt. No. 43].

On May 10, 2023, this Court entered an order denying Allied World's Motion to Dismiss and compelling arbitration. [Dkt. No. 45].

On May 23, 2023, Allied World appealed this Court's denial of the Motion to Dismiss to the District Court for the Eastern District of New York. [Dkt. No. 46]. On September 5, 2024, the District Court affirmed this Court order denying Allied World's Motion to Dismiss and compelling arbitration. [Dkt. No. 68]. On September 19, 2024, Allied World appealed the District Court's affirmation of this Court's denial of the Motion to Dismiss to the Court of Appeals for the Second Circuit. [Dkt. No. 70]. On May 7, 2025, the Court of Appeals for the Second Circuit affirmed this Court's and the District Court's denial of the Motion to Dismiss and determined that this adversary proceeding is subject to mandatory arbitration. [Dkt. No. 73].

On August 22, 2025, the Trustee filed the Trustee's Motion [Dkt. No. 84], and an accompanying Memorandum of Law in Support of the Trustee's Motion (the "Trustee's Memorandum") [Dkt. No. 85], seeking partial summary judgement on his claims for breach of insurance contract and declaratory relief. On the same day, Allied World filed its Cross-Motion [Dkt. No. 89], and an accompanying Memorandum of Law in Support of Allied World's Cross Motion ("Allied World's Memorandum") [Dkt. No. 90], seeking the dismissal of all of the Trustee's claims.

On September 12, 2025, Allied World filed a Memorandum of Law in Opposition to the Trustee's Motion ("Allied World's Opposition"). [Dkt. No. 95]. On the same day, the Trustee filed

a Memorandum of Law in Opposition to Allied World's Cross Motion (the "Trustee's Opposition"). [Dkt. No. 99].

On October 20, 2025, this Court ordered the parties to meet and confer to produce a joint Rule 7056 joint statement of material facts. [Dkt. No. 105]. On November 13, 2025, the parties filed a Joint Statement of Material Facts in accordance with this Court's Order. [Dkt. No. 108]

### III.  LEGAL STANDARD

#### A. Findings of Fact and Conclusions of Law

The Court is not required to state findings of fact and conclusions of law when ruling on summary judgment motions, pursuant to FRCP 52(a)(3), as incorporated by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

#### B. Legal Standard for Summary Judgement

Rule 56(c) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7056(c), provides that summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (internal citations omitted).

The Second Circuit has repeatedly noted that, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988) (citing *Celotex Corp.*, 477 U.S. at 330 n.2 (1986) (Brennan, J., dissenting)); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995); *Burrell v. City Univ. of New York,* 894 F. Supp. 750, 757 (S.D.N.Y. 1995). "If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate." *Pereira v. Cogan*, 267 B.R. 500, 506 (S.D.N.Y. 2001); *see Burrell*, 894 F. Supp. at 758 (citing *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)).

C. **Duty to Defend**

Under New York law, "an insurer's duty to defend is exceedingly broad, and is triggered 'whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy.'" *Emps. Ins. Co. of Wausau v. Harleysville Ins. Co. of New York*, 759 F. Supp. 3d 344, 352 (E.D.N.Y. 2024) (quoting *Emps. Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*, 726 F. App'x 56, 60 (2d Cir. 2018)) (citations omitted). In determining whether an insurer has a duty to defend, courts will "compare the allegations of the complaint with the operative insurance policy[;]" specifically, courts will look at whether "the complaint contains any facts or allegations which bring the claim even potentially within the

10

protection purchased." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co. (IBM II)*, 363 F.3d 137, 148 (2d Cir. 2004) (citations omitted).

An insurer may be relieved of its duty to defend if the allegations in the complaint fall under an applicable exclusion. However, to be relieved of the duty to defend, an insurer "must demonstrate that the allegations of [the] underlying complaint place that pleading solely and entirely within the exclusions of the policy and . . . the allegations are subject to no other interpretation." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 77 (2d Cir. 2013).

### D. Bad Faith

Under New York law, "[a] covenant of good faith and fair dealing is implicit in every insurance contract and encompasses not only any promise that a reasonable promisee would understand to be included, but also that 'a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." *Roemer v. Allstate Indem. Ins. Co.*, 163 A.D.3d 1324, 1325–26 (2018) (citations omitted). To establish a prima facie case of bad faith, the plaintiff must show a "gross disregard" of the insured's interests. *Id.* In New York, "there remains a strong presumption . . . against a finding of bad faith liability by an insurer . . . [which] can be rebutted only by evidence establishing that the insurer's refusal to defend was based on more than an arguable difference of opinion and exhibited a gross disregard for its policy obligations." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624–25 (2d Cir. 2001) (citations omitted).

## IV.     DISUCSSION

Coverage under the Excess Policy was triggered upon the exhaustion of the Primary Policy's limit of liability.[8] As a matter of law, the claims asserted in the D&O Action are covered under the Excess Policy.

### A. Prior Acts Exclusion

Under the Prior Acts Exclusion, the Excess Policy excludes coverage for any claims and allegations "arising out of, based upon, or attributed to any wrongful act(s) committed, attempted, or allegedly committed or attempted prior to January 7, 2017." [Dkt. No. 37, Ex. B]; Joint Statement ¶ 19. Allied World argues that coverage for the D&O Action is excluded under the Prior Acts Exclusion because the claims asserted are "premised upon specific wrongful acts taken before [January 7, 2017][.]" Allied World's Memorandum at 16. Specifically, Allied World argues that the allegations in the D&O Action are "tied to" or "could not exist absent wrongful acts alleged to have occurred before [January 7, 2017][.]" *Id.* at 17. The Trustee argues that coverage for the D&O Action is not excluded under the Prior Acts Exclusion because the D&O Action includes allegations of wrongful acts that occurred after January 7, 2017. Specifically, the Trustee points to allegations of the D&O Defendants' (1) "ongoing failure of oversight that occurred and continued until . . . January 30, 2017 [or] . . . September 14, 2017" and (2) "breach[] [of] fiduciary dut[ies] 'by allowing the Merger to become effective on January 30, 2017.'" Trustee's Memorandum at 17.

---

[8] The Excess Policy provides: "[Allied World] shall pay the individuals and entities insured under the Primary Policy . . . for Loss after exhaustion by payments of all applicable underlying limits by either the Underlying Insurers." Hiscox is included the Excess Policy's definitions of "Primary Policy" and "Underlying Insurers." Hiscox exhausted the Primary Policy limit of liability upon the payment of $1,307,113.47 in defense costs and $3,692,886.53 towards the Settlement Amount, triggering Allied World's obligation to "pay the individuals insured under the Primary Policy[.]"

The Trustee is correct. The D&O Action includes allegations that may not "aris[e] out of, [are] based upon, or [are] attributable to" events that occurred before January 7, 2017. [Dkt. No. 37, Ex. B]; Joint Statement ¶ 19. The D&O Action alleges that the D&O Defendants breached their fiduciary duties "[a]t the time of the Merger, on January 30, 2017" by allowing the Merger to "go forward instead of conducting a necessary and reasonable investigation into the Debtors' ability to take on liabilities, or . . . fail[ing] to act on the information collected[]" despite "ha[ving] access to financial information showing that the liabilities incurred would not be able to be paid by CHT following the Merger." D&O Action ¶ 82. The D&O Action also alleges that the D&O Defendants breached their fiduciary duties by "fail[ing] to object, investigate, or otherwise take reasonable care to prioritize the interests of CRT, its shareholders, and its creditors by or before January 30, 2017." *Id.* ¶ 83.

Allied World is simply incorrect that "all of the critical events and alleged wrongful acts were before January 7, 2017: the Sham Acquisitions, Sham Transactions, the Parmar Conspiracy, the failure to investigate or prevent the Parmar Conspiracy, and negotiations leading to the Merger Agreement, the Merger Agreement itself, and the failure to prevent the Merger all took place before January 7, 2017." Allied World's Opposition at 10. The Merger did not occur until the Merger Agreement was signed on January 30, 2017. D&O Action ¶ 46. One of the wrongful acts alleged was the D&O Defendants' breach of their fiduciary duties "on January 30, 2017" or "by or before January 30, 2017[.]" *Id.* ¶¶ 82–83. Accordingly, allegations that the D&O Defendants breached their fiduciary duties do not fall under Prior Acts Exclusion.

Further, the D&O Action alleges that the D&O Defendants were negligent by "fail[ing] to take any reasonable action to place the new officers on notice of the myriad of red flags associated with the Debtors' operations" and thereby "allowing the harm to Debtors to increase[.]" D&O

13

Action ¶¶ 88–90. There, the wrongful act alleged was the D&O Defendants' negligence, not the Merger. Even if the wrongful act alleged was the Merger, the Merger did not occur until after January 7, 2017, as the merger agreement was signed on January 30, 2017. D&O Action ¶ 46. Accordingly, the Trustee does not allege that all of the acts occurred before January 7, 2017. Therefore, coverage for the D&O Action is not excluded under the Prior Acts Exclusion.

### B. Pending or Prior Litigation Exclusion

Under the Pending or Prior Litigation Exclusion, the Excess Policy excludes coverage for any claims and allegations "arising out of, based upon or attributable to . . . any pending or prior litigation as of [January 7, 2017], or alleging or deriving from the same or essentially the same facts alleged in the pending or prior litigation." [Dkt. No. 37, Ex. B]; Joint Statement ¶ 20.

Generally, "if the policy language [in an insurance policy] is ambiguous, particularly the language of an exclusion provision, the ambiguity must be interpreted in favor of the insured." *Cmty. Health Ctr. of Buffalo, Inc. v. Rsui Indem. Co.*, 2012 WL 713305, *9 (citations omitted). The AW Policy's Pending or Prior Litigation Exclusion is akin to the exclusion applied by the court in *David v. American Home Assurance Company*; the court held that the exclusion was ambiguous, and therefore should be construed in favor of the insured, because "the terms 'same,' 'essentially the same,' and 'related' are so elastic, so lacking in concrete content, that they import into the contract . . . substantial ambiguities." 1997 WL 160367, *8–9 (citations omitted). However, the *David* court held that the insurer still owed the insured a duty to defend because, "even considering the complaints in the two underlying actions in a light most favorable to [the insured], . . . the . . . claims asserted [in the underlying actions] . . . are almost identical." *Id.*

The Trustee argues that the Pending Prior Litigation Exclusion is ambiguous, see Trustee's Memorandum at 20–21, while Allied World argues that it is not, Allied World's Memorandum at

22. As the language of the Pending or Prior Litigation Exclusion is almost identical to the language of the exclusion interpreted by the court in *David*, the Pending or Prior Litigation Exclusion is ambiguous and therefore should be construed in favor of the insured, whose claims were, in this case, assigned to the Trustee.

Here, the relevant "prior or pending litigation" is the Destra Action, which was commenced on December 27, 2016. The Trustee argues that the D&O Action does not fall under the Pending or Prior Litigation Exclusion because it "allege[s] that other Directors and Officers breached their duties of care and loyalty based on different conduct" and leaves out "precise operation details of the alleged sham transactions" that "are critical to the Destra Complaint[.]" Trustee's Memorandum at 22. On the other hand, Allied World argues that the D&O and Destra Actions have the same "factual nexus" and that the allegations in the D&O Action mirror the allegations in the Destra Action. Allied World's Memorandum at 21.

Although the allegations in the D&O Action arose at least in part out of the Merger, the claims in the D&O Action do not mirror, nor are they are "identical" to, the claims in the Destra Action. The claims in the Destra Action arise out of Parmar's allegedly wrongful acts while the claims in the D&O Action arise out of the wrongful acts of CHT's directors and officers. Specifically, the Destra Action alleges Parmar breached the fiduciary duties he owed to members of the CH Group by "caus[ing] CH Group to transfer to himself and away from its members one of the most valuable (and for CH Group, the only) assets it had." Destra Action ¶ 167.[9] The Destra Action alleges that Parmar "[b]y these acts and breaches, benefitted himself, while simultaneously harming the interests of Plaintiff CH Group and its members[.]" *Id.* ¶ 168. Meanwhile, the D&O

---

[9] Specifically, the Destra Action alleges "Parmar's breaches include orchestrating the June 8, 2014 Naya transfer with his friend and colleague Joel Plasco in an attempt to transfer to himself control, title to and the ultimate value of CH Group's asset, the Constellation Health Units, which were in turn valuable because of Constellation Health's ownership of the CHT Shares." Destra Action ¶ 167.

Action alleges CHT's directors and officers breached the fiduciary duties they owed to CHT and Orion by "[a]llowing Parmar to operate as CEO of Debtors despite information signaling his unfitness for the position, and the potential for fraudulent transactions[,]" "[f]ailing to investigate the acquisitions and transactions involved the Parmar Conspiracy[,]" and "[f]ailing to investigate the allegations contained in the Destra Litigation[,]" D&O Action ¶ 74, as well as "allowing the Merger to become effective on January 30, 2017, which had the reasonable and foreseeable effect that CHT would incur liabilities for which it had the inability to pay[,]" D&O Action ¶ 82. While the wrongful acts alleged in both actions relate at least in part to the Merger, the wrongful acts alleged in the Destra Action, Parmar's breach of his fiduciary duties to CH Group, are distinct from the wrongful acts alleged in the D&O Action, being the CHT directors and officers' breach of their fiduciary duties to CHT and Orion. Accordingly, the coverage for the D&O Action is not excluded under the Pending or Prior Litigation Exclusion.

### C. Bad Faith

Allied World argues the Trustee's second cause of action for breach of insurance contract, breach of the implied covenant of good faith and fair dealing, or bad faith, should be dismissed because "it has multiple good-faith defenses to coverage[]" that are "arguable[.]" Allied World's Memorandum at 24. The Trustee argues "Allied World deliberately or recklessly put its own interests ahead of its policyholders, looking only for reasons to avoid coverage from the start." Trustee's Memorandum at 21. For the reasons below, the Trustee's evidence of Allied World's bad faith is unconvincing.

First, the Trustee argues that Allied World acted in bad faith because Allied World claimed to not have received notice of the Griffiths or D&O Actions from any insured until February 10, 2021. Specifically, the Trustee alleges Allied World was on notice of the Griffiths and D&O

16

Actions because on January 4, 2018 CHT provided Allied World with "notice of circumstances that may give rise to a claim" and on March 26, 2020 Hiscox provided Allied World with a copy of the D&O Action. Trustee's Memorandum at 21–22. The Trustee argues that Allied World's assertion that it did not receive notice of the Griffiths and D&O Actions from any insured until February 10, 2020 despite the Trustee's "notice of circumstances that may give rise to a claim" and Allied World's receipt of a copy of the D&O Action from Hiscox "constitutes an unfair claim settlement practice under New York law for knowing misrepresentation of pertinent facts relating to coverage." Trustee's Memorandum at 22 (citing New York Ins. Law § 2601(a)(1)).

However, Allied World's assertion that it "did not receive notice of the Griffiths or D&O Actions from any insured until February 10, 2021" does not contradict the evidence. On January 4, 2018, CHT did not provide Allied World with notice of the Griffiths or D&O Actions, as the actions had not yet been commenced. Instead, CHT provided Allied World with "notice of circumstances that may give rise to a claim[.]" Notice of circumstances that may give rise to a claim does not constitute actual notice of any actions that arise out of those circumstances.

Further, while Allied World received a copy of the D&O Action, this does not constitute "notice from . . . any insured" because Allied World was sent a copy of the D&O Action from Hiscox, who is not an insured under the Allied World Policy.

Second, the Trustee argues Allied World acted in bad faith by "look[ing] at the date of the loan/merger closing to determine coverage" instead of "consider[ing] whether coverage would turn on relatedness to earlier acts." Trustee's Memorandum at 22. However, whether coverage hinges on the date the Merger closed or earlier acts related to the Merger is a difference in a coverage opinion and an "arguable difference of opinion" does constitute bad faith. *Nouveau Elevator Indus., Inc. v. Con'l Cas. Ins. Co.*, No. 05-CV-0813(JFB)(RLM), 2006 WL 1720429 at

17

\*8 (E.D.N.Y. June 21, 2006) (citations omitted) ("On these facts, the Court finds that no reasonable trier of fact could determine that the dispute reflects anything more than an arguable difference of opinion rather than bad faith by the insurer, and so the bad faith denial of insurance claim fails as a matter of law.").

Finally, the Trustee argues Allied World acted in bad faith by denying coverage "on the eve of mediation" and that such conduct constitutes a "gross disregard" for CHT's interests. Trustee's Memorandum at 23. This allegation is not sufficient to overcome the presumption against bad faith. First, Allied World never waivered in their coverage position; throughout the course of the Actions filed, Allied World consistently informed CHT of its denial of coverage and bases for denial. Second, despite denying coverage, Allied World attended two out of the three mediation sessions held. Joint Statement ¶ 112. Allied World was only "unable to attend the second mediation due to scheduling conflicts but offered to attend on another day that week. The mediator chose to go forward . . . with the parties available, noting that he would follow up with Allied World." *Id.* ¶ 113.

Based on the summary evidence presented, there is no genuine issue of material fact as to whether Allied World acted in bad faith.[10]

---

[10] The Trustee asks the Court to defer ruling on the bad faith claim and allow additional discovery to proceed on the issue of bad faith pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, incorporated by Fed. R. Bankr. Proc. 7056. *See* Trustee's Opposition to Allied World's Motion for Summary Judgement at 24 [Dkt. No. 99]. The Trustee argues this "additional discovery" would include "depositions of Allied World's claim handlers and corporate designees" and "depositions or affidavits from the directors and officers themselves." *Id.* However, this adversary proceeding was commenced in 2021; the Trustee has had approximately five years to seek information and conduct discovery on this issue. The Trustee does not argue that they were prevented in any way from collecting these depositions or affidavits over the past five years. The Trustee also does not argue Allied World interfered in any way with its ability to obtain facts it asserts are essential to its bad faith argument, nor does the Trustee specify how it believes this "additional discovery" might produce admissible evidence of bad faith. Therefore, the Trustee has failed to satisfy its Rule 56(d) burden.

## **CONCLUSION**

As illustrated above, the Trustee's Motion should partially granted because there is no genuine issue of material fact as to whether the Excess Policy provides coverage for the D&O Action, Allied World breached the Excess Policy by denying coverage for the D&O Action, and the Excess Policy was triggered by the exhaustion of the Primary Policy's limits through Hiscox's payment towards the Settlement Agreement. Allied World's Cross Motion should be partially granted, dismissing the Trustee's claim for breach of the covenant of good faith and fair dealing, or bad faith because there is no genuine issue of material fact as to whether Allied World acted in bad faith in its investigation of CHT's claims. After due deliberation, and for good cause shown, its hereby

**ORDERED**, that the Trustee's Motion for Summary Judgement is denied in part as to the claims related to the Griffiths Action; and it is further

**ORDERED**, that the Trustee's Motion for Summary Judgement is granted in part as to the (1) the first cause of action for breach of insurance contract as it pertains to the D&O Action and (2) declaratory relief that (a) the obligations under the Excess Policy were triggered and (b) the Excess Policy provides coverage for the D&O Action; and it is further

**ORDERED**, that Allied World's Cross Motion for Summary Judgement is denied in part as to its request for dismissal of the Trustee's first cause of action for breach of insurance contract and third cause of action for declaratory relief; and it is further

**ORDERED**, that Allied World's Cross Motion for Summary Judgement is granted in part as to the dismissal of the Trustee's second cause of action for breach of the implied covenant of good faith and faith dealing.



Dated: February 20, 2026
Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge